141 So.2d 816 (1962)
M.H. WOODRING, APPELLANT,
v.
CROWN ENGINEERING CO., A CORPORATION, AND ARTHUR A. MADSEN, APPELLEES.
No. 2500.
District Court of Appeal of Florida, Second District.
June 1, 1962.
Thomas M. Carney of Goldner, Carney & Marger, St. Petersburg, for appellant.
John Allen, Jr., of Mann, Harrison, Mann & Rowe, St. Petersburg, for appellees.
SHANNON, Chief Judge.
The appellant, plaintiff below, appeals from a final judgment of dismissal of his complaint below, wherein a money judgment was sought for commissions allegedly due under a contract of employment with Crown Engineering Company, defendant below.
The motion to dismiss contained several grounds, but insofar as this opinion is concerned it is necessary only to set out two of them. The first ground is that it appears on the face of the amended bill of complaint that the court lacks jurisdiction over the subject matter; and, second, the defendant is a corporation organized under the laws of the State of Montana and was not and is not subject to service of process within the State of Florida.
The plaintiff in this action seeks to recover commissions that he alleged are owed to him by the defendant. The commissions grew out of the alleged employment of the plaintiff. The plaintiff asserts that he was employed in June, 1956, by Arthur W. Madsen, president of Crown Engineering Co., which had its headquarters in Billings, Montana, and was designated as national sales manager. Mr. Madsen, by his affidavit, states that the plaintiff was employed *817 as a manufacturer's representative, or a salesman on a straight commission basis with no area designated with which the plaintiff was to sell the product of the Crown Engineering Co. The plaintiff, on the other hand, takes the position, by his amended complaint and his affidavit, that Crown Engineering Co. was very interested in participating in the phenomenal growth of building in Florida and was very interested in having its product, a certain equipment for the manufacture of concrete tile, sold within the State. He further states that he was a resident of St. Petersburg and that he was employed in Florida and advertised for sales representatives for the defendant corporation in Florida; that he took in a sixty day school that was operated by the defendant in Atlanta, Georgia; and to quote a portion of his complaint, he states:
"That thereafter on or about the 15th day of September, 1956 the plaintiff in his capacity of employee of the defendant's advertised in the newspapers in St. Petersburg, Florida, promoting the sale of the defendant's machinery and thereafter received inquiries from G.D. Cashdollar, S.W. Baker, H.E. Cunningham, Jr., I.W. Smith, Jr., P.H. Olivier, Myron H. Center, Jr., Robert H. Kramer, Ralph Szhamuloeffel and others, requesting information and interviews attendant to the purchase and sale of the defendant's products. That the plaintiff met with these persons and others giving a sales promotion program as directed by the defendants and thereafter made sales of machinery to Robert H. Kramer, Ralph Szhamuloeffel, and others in the St. Petersburg-Tampa, Florida area."
These allegations are supported by his affidavit. The affidavit of Madsen alleges that the plaintiff may have been domiciled in Florida, but that the records of Crown Engineering Co. disclosed that 95% of his time and efforts were in Texas and Illinois, and, in fact, only in Texas, Illinois, Michigan and Missouri, did the plaintiff ever conclude any business on behalf of Crown Engineering Co.
The fundamental question in this case is whether or not the appellee-corporation was brought within the provisions of Sec. 47.16 and 47.30, Fla. Stat., F.S.A., so as to render it amenable to the jurisdiction of the courts of this state. Sec. 47.16(1) states, in part, as follows:
"The acceptance by any person or persons, individually, * * * and all foreign corporations, * * * of the privilege extended by law to non-residents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, shall be deemed equivalent to an appointment by such persons and foreign corporations of the secretary of the state as the agent of such persons or foreign corporations upon whom may be served all lawful process in any action, suit or proceeding against them, or either of them, arising out of any transaction or operation connected with or incidental to such business or business venture, and the acceptance of such privilege shall be signification of the agreement of such persons and foreign corporations that any such process against them or either of them, which is so served shall be of the same legal force and validity as if served personally on such persons or foreign corporations. * * * Provided that if a foreign corporation has a resident agent in the state, service of process shall be had upon such resident agent as now provided by statute."
Sec. 47.30 of the same law reads, in part, as follows:
"Service of such process shall be made by the plaintiff or his attorney by either leaving a copy of the process with a fee of two dollars in the hands of the secretary of state, or in his office, or by mailing a copy of such process *818 with a fee of two dollars to the secretary of state and such service shall be sufficient service upon a defendant who has appointed the secretary of state as his agent for the service of such process; provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff, or his attorney, to the defendant, and the defendant's return receipt and the affidavit of the plaintiff, or his attorney, of compliance herewith are filed with the papers in the case on or before the return day of the process or within such further time as the court may allow, * * *."
In tracing the expansion of the doctrine enunciated in Pennoyer v. Neff, the Supreme Court of the United States, speaking through Mr. Justice Black in McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 221, 78 S.Ct. 199, 200, 2 L.Ed.2d 223, had this to say:
"Since Pennoyer v. Neff, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned `consent,' `doing business,' and `presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, the Court decided that `due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice"' Id., 326 U.S. at 316, 66 S.Ct. at 158.
"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."
That Florida is in accord with the above statement can be seen from the opinion in State ex rel. Guardian Credit Indem. Corp. v. Harrison, Fla. 1954, 74 So.2d 371, where Mr. Justice Hobson, in writing for the court, says:
"The International Shoe doctrine adopts a test originally formulated by Judge Learned Hand in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, in making relevant an `"estimate of the inconveniences" which would result to the corporation from a trial away from its "home" or principal place of business * * *', and it requires only that the corporation have such minimum contacts with the forum that the maintenance of suit against it there `does not offend "traditional notions of fair play and substantial justice."'".
Several cases in Florida in the last few years have, we think, settled this question. In Wm. E. Strasser Construction Corp. v. *819 Linn, Fla. 1957, 97 So.2d 458, the supreme court, after saying that each case must be resolved on the basis of the facts revealed by the record, held that defendants who had acquired certain land in Florida and had entered into a contract for the construction of an apartment building thereon with the alleged intent of renting it to tenants for production of income would be deemed to have engaged in a business venture in Florida sufficient to subject them to jurisdiction of state court obtained by substituted service on the secretary of state, in lieu of personal service. Since the Strasser case this court decided the cases of Toffel v. Baugher, Fla. App. 1960, 125 So.2d 321; and Oxley v. Zmistowski, Fla.App. 1961, 128 So.2d 186. In the Toffel case this court decided that the lower court did not have jurisdiction and in the Oxley case we decided on the facts and points there presented that the lower court did have jurisdiction. The opinion in the Oxley case, supra, contains a discussion of the general law on this subject as well as a review of the Florida decisions. See also Continental Copper & Steel Indus. v. E.C. "Red" Cornelius, Fla. App. 1958, 104 So.2d 40.
We think, from the facts that are discernible in the two affidavits in the instant case, and in view of the several cases to which we have referred, the facts clearly show that Crown Engineering Co. had taken sufficient steps within the purview of Ch. 47, supra, to establish a business venture in the State of Florida. We hold, therefore, that the court below acquired jurisdiction of the parties by service of process obtained under Sec. 47.16, supra. It further appears from the record that the notice requirements of Sec. 47.30, supra, have been substantially complied with in the instant case.
The order dismissing the complaint is reversed and the cause remanded for further proceedings.
ALLEN and SMITH, JJ., concur.