**MISSISSIPPI WOOD PRESERVING CO.**
**v. ROTHSCHILD et al.**

No. 13911.

United States Court of Appeals
Fifth Circuit.

Jan. 14, 1953.

Elizabeth Hulen Grayson, Jackson, Miss., for appellant.

T. Harvey Hedgepeth, and John C. Satterfield, Jackson, Miss., George G. Dimick, Shreveport, La., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

The suit in two counts, one for breach of warranty, the other for negligence, was for damages caused to plaintiff's plant and building by the rupture in 1948 of a creosote cylinder manufactured by defendants, citizens of Louisiana, d/b/a Rothschild Boiler & Tank Works, for, and sold to, plaintiff in 1947.

Plaintiff, alleging that: though not qualified under the laws of the state to do business in Mississippi, defendants had performed work and services in the state and were in fact doing business there at the time the alleged claim arose; and that the cause asserted had accrued therefrom; prayed that process issue under Section 1437, Mississippi Code of 1942,[1] to Ladner, the Secretary of State for the State of Mississippi, as defendants' agent for service of process.

Process having been issued to, and served upon, Ladner, the defendants filed an elaborate motion to dismiss for want of jurisdiction and for other reasons set forth in the motion.

Before, however, the motion came on for hearing, one of the named defendants, B. A. Rothschild, Jr., pursuant to notice that the deposition of one West was to be taken in Mississippi, came into the state solely for the purpose of attending the taking, and was personally served with process while in attendance thereon.

The district judge, on the defendant's motion, sustained his claim of immunity from service of process and quashed the process as having been improperly served upon him.

Thereafter, defendants' motion, coming on for hearing, was fully heard, and the district judge filed elaborate findings of fact and conclusions of law. Of the opinion that the evidence did not support the claim that defendants were doing business in Mississippi so as to subject them to suit in that state, he dismissed the suit for want of jurisdiction.

Appealing from the judgment and citing many cases from Mississippi and elsewhere, but relying particularly upon the opinion in Davis-Wood Lumber Co. v. Ladner, 210 Miss. 863, 50 So.2d 615, decided since the decision of this case be-

1. "§ 1437. Venue—actions for damages against non-residents—process.—All civil actions for the recovery of damages brought against a non-resident of the state of Mississippi may be commenced in the county in which the action accrued. Service of process may be had in any county of the state where the defendant, or any of them, may be found.

"Any non-resident, person, firm, partnership, general or limited, or any corporation not qualified under the constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state, shall, by the doing of such business or the performing of such work or services, be deemed to have appointed the secretary of state, or his successor, or successors in office, to be the true and lawful **attorney or agent** of such non-resident, upon whom process may be served in any action, accrued or accruing from the doing of such business or the performing of such work or service, or as an incident thereto by any such non-resident, or his, their or its agent, servant or employee. The doing of such business or the engaging in any such work or service in this state shall be deemed a signification of such non-resident's agreement, and equivalent to an appointment by, such non-resident of the secretary of state of the state of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident upon whom may be served all lawful process in any action or proceeding against any such non-resident for any cause of action which has accrued or may accrue in this state."

low, appellant insists: that the district judge misapprehended the effect and reach of the statute and misapplied it to the facts. It insists, too, that he erred in quashing the service of process on B. A. Rothschild, Jr.

Appellees on their part, with equal earnestness and sincerity, insist: that appellant's reliance on the Davis case will not do; that its facts are entirely different from the facts in this case; that what was said in it is not in conflict with, but in conformity to, earlier Mississippi decisions and particularly Lee v. Memphis Pub. Co., 195 Miss. 264, 14 So.2d 351, 152 A.L.R. 1428, on which appellees place their main reliance; and that the district judge correctly construed the invoked statute and as correctly applied it to the undisputed facts.

We find ourselves in complete agreement with appellees' view that the facts [2] in the Davis case are quite different from the facts in this one, and that if the decision in that case is to be considered as authority for its precise facts alone, it will not support appellant's contention.

We cannot agree with appellee, though, that the Davis case is just another fact case marking no change in, no contribution to, the general understanding and solution of the question which a case of this nature poses, the jurisdiction of and service up-

on persons and corporations, non-residents of the state, who perform acts or services therein.

On the contrary, we think that, beginning on page 620 of 50 So.2d, with the statement, "Whether a corporation is doing business in a state in the sense required for a process statute is a question dependent primarily upon the facts and circumstances of each particular case", and continuing to its end, the opinion recognizes and adequately meets the need for an authoritative re-examination and restatement of the law of Mississippi, indeed is a major contribution to it, with particular reference to Secs. 1437–1440, Mississippi Code of 1942.

In short, like other leading cases, the Davis case not only lays the law down for its precise facts but clearly setting down the principles which are to guide in future decisions, it marks a point of departure, it sets up a stream of tendency in the law.[3] It is, therefore, not a figure of speech but the literal truth when we say that the tests it sets up for determining the interpretation and application of the statute have become as much a part of it as if they had been written into it.

Because this is so, and because, in determining the question presented here, was or was not the district judge right in holding that under Mississippi law the de-

2. As material here, these are summarized in the opinion as follows:

"Appellant and appellee executed the contract in Mississippi, and it was wholly performed within this state, final delivery of the manufactured lumber being made on appellant's trucks in Harrison County. The contract involved a continuous and substantial series of transactions covering a period of two years during which appellant sent its trucks into the state several times each week to pick up the timber. During most of this period Wood made regular telephone calls to the Company with reference to the time for sending Company trucks to pick up the lumber and with reference to needed supplies, parts, and repairs for the mill. The Company paid one-half of the sawyer's salary and for the stacking of the lumber, or at least a substantial part of it at the mill. The activities carried on in Mississippi by appel-

lant resulted in the acquisition of large quantities of lumber for resale. They were within the scope and purpose of the usual activities of appellant. They were not isolated incidents, but occurred continuously in this state over a period of almost two years. They were substantial in scope. This action arose out of those transactions." [210 Miss. 863, 50 So.2d 620.]

3. Cf. Carrollton Excelsior & Fuel Co. v. New Orleans & N. E. R. Co., 5 Cir., 69 F.2d 691, where it is said at page 693:

"Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L. Ed. 553, 9 Ann.Cas. 1075, was more than the decision of a case. It laid down principles having germinative and expansive power. Subsequent decisions following its lead have in the application of its principles to new facts broadened and expanded them." Citing many cases.

236

fendants, under the substantially undisputed facts[4] in this case, were not doing business in Mississippi within the meaning of the invoked statute, this court should and will give controlling weight to its teachings, an analysis of the Davis opinion is a necessity.

■ What then are the significant features of the decision? What does its analysis yield? First, it points out the difference between the construction which is accorded in Mississippi to a statute forbidding access by foreign corporations to the courts of the state, because of their failure to comply with statutory provisions for doing business therein, and that given to a statute, like the one in question here, providing for service on a designated agent where, without complying with the statute, they undertake to do business in the state.

This difference, as the decision points it out, is that, while the former is strictly construed so that exclusion from access to the courts of the state requires a strong showing that the statute has been violated, the latter is liberally construed since otherwise citizens of a state would be forced to resort to another jurisdiction in order to maintain suits against foreign corporations as to matters arising out of transactions had within the state.

Another strongly significant thing about the decision is that, unlike earlier decisions, particularly the Lee case, upon which appellees rely, the decision in the Davis case does not profess to be handed down upon the compulsion of federal laws or decisions. Thus, while it does discuss federal decisions along with other authorities and text books, it is at last a decision of state law upon the meaning and effect of a state statute. Cf. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, where the decision of the state court was not clear on that point.

■ Proceeding then to construe the coverage of the statute broadly, the decision, agreeing with our court that the statute embraces tort action, agrees also with Condon v. Snipes, 205 Miss. 306, 38 So.2d 752, that it extends to an action on a contract arising out of business done within the state. It gives as its reason for doing so that the cases holding in favor of jurisdiction "are not based upon the presence or consent theory, but upon the idea that it is reasonable and just to subject the corporation to suit in the state as though it had consented where the action is based

4. These are: (1) That defendant has at no time had an office, place of business or agent in Mississippi.

(2) That, as a result of negotiations beginning in the latter part of 1946, conducted by correspondence and by personal contacts in Mississippi and in Louisiana, and closed by correspondence, defendants agreed to construct and deliver to plaintiff two creosoting cylinders for use in plaintiff's plant at Brookhaven, Mississippi, and the tanks were manufactured, shipped to and installed by plaintiff about May, 1947.

(3) On July 16, 1948, the door of one of the cylinders ruptured. It was sent to Shreveport for repair and was sent back, and, in the course of tests, ruptured again. Taken back, it was again repaired. While most or practically all of the work was done in Shreveport, defendant had representatives in Mississippi at the time of the testing and at both of the occasions when the repaired and the new doors were installed.

It is to recover the damage caused by the rupture in July, 1948, that the suit was brought.

In addition to these acts which are claimed as a doing business in Mississippi, the facts show that, in 1947, defendants fabricated for plaintiff's plant at Brookhaven and shipped to and set up there four oil tanks. In the same year it manufactured three small oil tanks and shipped them to Interstate Oil Pipe Line Co., at Liberty, Mississippi, together with another one shipped sometime, the date not made clear, between 1946 and 1949.

(4) The total volume of business percentage wise done by defendants from 1946 through 1948, involving any matter in Mississippi was a little more than .009 of his total volume. The total monetary payroll percentage for work done in Mississippi was .0047, while the gross business of Rothschild in three years was over $1,200,000.

upon rights arising from the activities within the state."

Finally, coming to the meat of the decision as it affects this case, the opinion, not in terms disagreeing with or limiting the opinion in the Lee, or any other case, lays down, as the law of Mississippi, general rules, by the application of which to its particular facts each case may, indeed must, be determined. We, therefore, quote freely from this decision:

"In A. L. I., Restatement of Conflict of Laws, Sec. 167, it is concisely said that 'doing business is doing *a series of similar acts* for the purpose of thereby * * * accomplishing an object, *or doing a single act for such purpose with the intention of thereby initiating a series of such acts'*. Where a corporation has entered the state through its agents and is engaged in carrying on and transacting through them a substantial part of its ordinary business on a regular basis, it is doing business within the state so as to be subject to process. The fact that none of several acts or transactions considered separately constitute 'doing business' is not conclusive. 23 Am. Jur., Foreign Corporations, Sec. 361. * * *

"* * * The criteria in each case must necessarily be *ad hoc* in nature, both as to the particular facts and as to the nature of the statute sought to be applied, that is, whether it effectuates regulation, taxation, process, or other governmental purpose. 23 Am.Jur., Foreign Corporations, Secs. 360, 362. The test oftentimes is stated in terms of 'presence' within the state, or 'consent' to process, but these criteria are fictitious where there is in fact no consent and the corporation is not present

by agents in the state. *The fact that the activities relied on to constitute 'doing business' are the identical ones with respect to which the suit is brought is significant.* Ibid., Sec. 363. *That is a factor connecting the corporation's physical activities in the state to the fairness of an insistence that it will be suable for them in such state.* This is illustrated by the present action, where there was entrance into the state by its agents who performed the corporation's usual business functions in a continuous, regular manner. From those actions this contract resulted. * * *" (Emphasis supplied.) 50 So.2d at pages 621-622.

Finally at page 624 of 50 So.2d, the court sums up in a single paragraph the gist of the whole opinion and applies it to the significant facts [5] of the case:

"In Condon v. Snipes, supra, 205 Miss. 306, 38 So.2d [752] 756, this Court pretermitted the question of 'the validity of the last mentioned statute in cases where the defendant is not subject to state regulation'. *That question is now presented, and we hold that where the action arises out of the activities of the non-resident in the state, Sec. 1437 et seq. are applicable.* This is in accord with the terms of the statute and the principle of Condon v. Snipes, Hess v. Pawloski [1927, 274 U. S. 352, 47 S.Ct. 632, 71 L.Ed. 1091], and the International Shoe [Co. v. State of Wash., 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95] and Travelers Health Association [v. Com. of Va., 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154] cases. *Any distinction between jurisdiction founded upon doing business in a state which involves*

---

5. As stated in the opinion, these are:

"*Here appellant's contract with appellee was executed and performed in this state over a period of about two years.* Appellant sent its trucks and drivers into the state for the lumber several times a week and had one of its officers practically living here and keeping in day-by-day touch with appellant's offices as to the de-

mands of the transactions. Appellant paid for stacking the lumber and part of a sawyer's salary. *These and other circumstances were a continuous and substantial series of transactions* within the state out of which *this cause of action arose. These facts more than suffice for a jurisdictional basis for this suit.*" (Emphasis supplied.)

*danger to life or property or state regulation, and on the other hand contractual obligations arising out of such business, is artificial and not consistent with the principle or policy of the statutes and foregoing decisions.* The present act affords ample notice and opportunity to be heard. Code Secs. 1437–1440. The transactions in the International Shoe case were not of an economically harmful or dangerous character. This *process statute affords basis for jurisdiction of any liability-existing conduct which results from and arises out of the doing of business within the state by a non-resident.*" (Emphasis supplied.)

 Giving full effect to these significant passages and noting the recurrence in them of, and the emphasis upon, continuity, series, succession, congeries, as contrasted with occasional, single, sporadic, episodic, it is quite clear that while a literal reading of the statute would bring the defendants within its terms since they did do an act in the state and the cause of action sued on grew out of it, it is equally clear that the Supreme Court in the Davis case has not so construed the statute. On the contrary, it has made it plain that it does not construe it literally and as conferring jurisdiction on a single act or acts, but construes it as requiring a series of acts amounting to a continuity before it can be held under the statute, that there is a doing of business in the state.

Sum up the evidence for the plaintiff as favorably as one will, there cannot be distilled from it any kind of congeries of action which will meet the tests of the Davis case and confer jurisdiction. Taking that opinion, as we must, as yardstick and guide, and applying to the facts of this case the guiding principles it lays down, we are in no doubt that the district judge was right in holding that the defendants have not been engaged in such a course of conduct as under its teachings have made them subject to the jurisdiction and process of the courts in Mississippi. We are equally in no doubt that B. A. Rothschild, Jr. was immune from process while attending the taking of depositions in the cause and that the district judge was right in quashing the process served upon him.

The judgment dismissing the action for want of jurisdiction is accordingly affirmed.