Nettie Lou DOOLY, Executrix of the Estate of B. A. Dooly, Deceased, et al., Appellants,

v.

Thomas PAYNE et al., Appellees.

No. 20382.

United States Court of Appeals
Fifth Circuit.

Jan. 21, 1964.

Marshall H. Fitzpatrick, Birmingham, Ala., Mead, Norman & Fitzpatrick, Birmingham, Ala., Copeland & Copeland, Gadsden, Ala., of counsel, for appellants.

John A. Lusk, Jr., Gadsden, Ala., Lusk, Swann & Burns, Gadsden, Ala., of counsel, for appellees.

Before RIVES and JONES, Circuit Judges, and DAWKINS, District Judge.

JONES, Circuit Judge:

B. A. Dooly and his wife, Nettie Lou Dooly, as partners, operated Dooly's Grill, in Gadsden, Alabama. B. A. Dooly died and his wife became the executrix of his estate, and as executrix took her husband's place in the partnership. This partnership will be referred to as Dooly. Thomas Payne, Harold V. Kelton, J. W. Vox, Walter E. Blakely and Gerald Spates are partners doing business under the name of the Broaster Company, and by that name it will be here designated. Its place of business was Rockton, Illinois. All of its partners resided in Illinois except Blakely who lived in Wisconsin. The Broaster Company manufactured cooking devices known as Broasters, which were described as pressure fryers for commercial use. The Broaster Company entered into an agreement with Harry G. LeBlanc, Sr., Harry G. LeBlanc, Jr. and Maurice J. LeBlanc, a partnership doing business at New Orleans, Louisiana, in the name of Metairie Fine Foods. It will be called Metairie in this opinion.

The agreement granted to Metairie the exclusive right to purchase Broaster equipment for resale in Louisiana and Mississippi, and by a supplemental contract dated January 1, 1961, Metairie was given an exclusive franchise to purchase Broaster equipment for resale in Alabama, Georgia and the counties in Tennessee west of the Tennessee River. The agreement provided, among other things, that Metairie would provide each purchaser from it with installation and service. The agreement recited that it did not constitute Metairie an agent or local representative of the Broaster partnership for any purpose whatever. Metairie was required, by the agreement, to keep Broaster equipment on display and have such equipment available for demonstration purposes.

Metairie sold Dooly a Broaster for use in the operation of their restaurant. After it had been in use for some time Dooly decided that a larger one was required. Metairie had a Broaster of the larger size desired by Dooly which Metairie had used as a demonstrator for some time. On January 7, 1961, Metairie sold this equipment to Dooly and installed it in their restaurant. The Dooly partners knew the machine had been used. The Broaster Company furnished Dooly with a listing of seasoning and supplies for use in connection with the operation of the machine and on one occasion a direct order was placed and filled for merchandise invoiced at $39.00. In February, 1961, Mr. Dooly telephoned Metairie that the equipment was not properly functioning. One of the Metairie partners went to Gadsden and installed a new part. On March 27, 1961, Dooly wrote Metairie that the Broaster was giving mechanical trouble in failing to maintain temperature and pressure. The assistance of Metairie was sought in helping to eliminate these mechanical troubles and a request was made for a Metairie service man to call as soon as possible. On April 2, 1961, the Broaster took fire, and the fire spread to and badly damaged the building.

Nettie Lou Dooly, as executrix of the estate of her deceased husband, and in her own right, brought suit in a state court of Alabama for themselves and on behalf of two insurance companies, against the Metairie partnership, its members, the Broaster Company, and its members, to recover for the fire damage, claiming that the Broaster machine was defective and dangerous, and known by the defendants to be so, and that the dangerous condition of the equipment was the cause of the fire and of the damage resulting from the fire. Diversity of citizenship permitted removal to the United States District Court for the Northern District of Alabama. Service of process upon the Broaster Company and its members was attempted by a compliance with the terms of an Alabama statute which provides for procuring service upon nonresident defendants. The court held the service of process upon the Broaster Company and the Broaster partners ineffectual and granted a motion to quash and to dismiss them as parties defendant for want of jurisdiction. A determination under Rule 54(b), Fed.Rules Civ.Proc. 28 U.S.C.A., gave finality to the

dismissal. This appeal is from the order granting the motion, quashing service, and dismissing the Broaster partnership and partners.

The Alabama statute, upon which reliance is placed as authorizing substituted service, provides:

"Any non-resident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the secretary of state, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action accrued, accruing, or resulting from the doing of such business, or the performing of such work or service, or relating to or as an incident thereof, by any such non-resident, or his, its or their agent, servant or employee. And such service shall be valid whether or not the acts done in Alabama shall of and within themselves constitute a complete cause of action." Ala.Code, Recomp. 1958, Title 7 § 199(1), 1961, Cum. Pocket Part, Laws of Ala.1961, No. 885.

The statute provides also for the manner of making service upon the secretary of state and the giving of notice by him to the non-resident defendants.

The landmark decision which has become the point of departure in the development of the expanded concept of state jurisdiction[1] over non-residents is International Shoe Company v. State of Washington[2] where the doctrines of "presence" and "consent" of Pennoyer v. Neff[3] and its successors were discarded as fictions and the "minimum contacts" principle was announced. This principle was amplified in McGee v. International Life Insurance Co.[4] The McGee case was followed, in the same term, by Hanson v. Denckla[5] which teaches that, although the door of non-resident jurisdiction has been opened wider by International Shoe and McGee, it has not been removed from its hinges, and it is stated to be the rule that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283. It is the quality and nature of the activity rather than mechanical tests, that are controlling in determining whether the minimum contacts test of due process has been met,[6] and each case is to be decided on its facts and under the law of the forum state.[7]

There are two decisions of the Supreme Court of Alabama which, we think, are pertinent to the problem here. In Boyd v. Warren Paint & Color Co.,[8] decided in 1950, there was a regular and systematic solicitation of orders in Alabama by a salesman for a Tennessee corporation which manufactured paints, resulting in a continuous flow of the corporation's paint products into Alabama. It was held that the courts of the State of Alabama could assert jurisdiction over the Tennessee corporation in an action against it for breach of warranty in fur-

1. Federal jurisdiction in this case being based upon diversity of citizenship the same rules are applicable as would control in a court of the state of the forum.

2. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

3. 95 U.S. 714, 24 L.Ed. 565.

4. 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

5. 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

6. International Shoe Co. v. Washington, supra; Calagaz v. Calhoon, 5th Cir. 1962, 309 F.2d 248.

7. Mississippi Wood Preserving Co. v. Rothschild, 5th Cir. 1953, 201 F.2d 233.

8. 254 Ala. 687, 49 So.2d 559.

nishing defective paint to the plaintiff, on orders taken in Alabama by the agent of the corporation. The court held that the regular and systematic solicitation of orders by the foreign corporation resulting in the flow of goods into the state constituted doing business in the state and within the reach of the state's judicial process. The other Alabama case is Ex parte Emerson,[9] decided in 1960. In this case Mrs. Laura H. Emerson filed a complaint in an Alabama court against J. B. King, a resident of Texas, and sought to bring him into court under the provisions of Section 199(1). King was a manufacturer of a compound, which he called Pedolatum, for the removal of corns and calluses. King's product was marketed by three or four men selling Pedolatum throughout the United States. The sales in Alabama, made through these media, were casual and occasional only. The court upheld an order quashing a summons directed to King with service made under the statute on the secretary of state. The court observed that those who made sales in Alabama were either selling goods which they had purchased from King, or were independent contractors. Therefore, the Alabama Supreme Court held, King was not doing business in Alabama and was not subject to the process of its courts under Section 199(1).

The factual differences between the Boyd and Emerson cases clearly show why the process was good in the one case and not in the other, and this is pointed out in the Emerson opinion. In the Boyd case the court stressed the regular and systematic solicitation of orders by the defendant through its agents resulting in the continuous flow of its products into the state. In Emerson neither the defendant nor his agents were selling or soliciting in Alabama. In New York Times Company v. Sullivan,[10] decided in 1962, jurisdiction over the New York publisher, obtained by service on the secretary of state, was upheld on the factual showing that the defendant was doing business in Alabama by having a staff correspondent in Alabama on frequent occasions, using the services of other compensated correspondents regularly, distributing its newspapers in the state through mail to subscribers and by sales through distributors and dealers in the state, and by the solicitation and sales of advertising by agents sent into the state by the defendant or its subsidiary.[11]

Dooly cites the case of Florio v. Powder Power Tool Corporation,[12] a case arising in Pennsylvania, as supporting its position. There an Oregon manufacturer of power tools sold its product to a distributor in Pennsylvania. One of the power tools made by the Oregon manufacturer and purchased from it by the Pennsylvania distributor was sold to a customer by the latter. While being used on a construction job where Florio was employed the tool misfired and Florio was injured. Suit was brought against the Oregon manufacturer and substituted service was relied upon to give personal jurisdiction over the defendant. In the Florio case it was shown that a representative of the manufacturer came into Pennsylvania to instruct the distributor and its personnel in the sale and distribution of the manufacturer's products, and to make repairs and adjustments of the manufacturer's products in the hands of the distributor and its customers, and these activities were conducted with such regularity as to constitute a systematic scheme of sales promotion. This showing, with the other facts of the case, was held to be doing business.

Reliance is also placed by Dooly upon WSAZ, Inc. v. Lyons,[13] where service of process under the Kentucky statute was involved. A West Virginia television sta-

9. 270 Ala. 697, 121 So.2d 914.

10. 273 Ala. 656, 144 So.2d 25, cert. granted 371 U.S. 946, 83 S.Ct. 510, 9 L.Ed.2d 496.

11. See also Arrowsmith v. United Press International, 2d Cir. 1963, 320 F.2d 219; and the annotation at 38 A.L.R.2d 747. Cf. New York Times v. Connor, 5th Cir. 1961, 291 F.2d 492; Connor v. New York Times, 5th Cir. 1962, 310 F.2d 133.

12. 3rd Cir. 1957, 248 F.2d 367.

13. 6th Cir. 1958, 254 F.2d 242.

tion was sued in Kentucky for libel. The county in Kentucky, Boyd County, where suit was filed [14] was in the primary telecasting area of the defendant. It solicited and procured advertising contracts in Boyd County, and sent its representatives into the county to solicit advertising. This activity, coupled with the sending of its telecasts to the area constituted doing business and the minimum contacts test of the International Shoe case, was met. In the Florio case the manufacturer sold and solicited in the state of the forum and hence was doing business there.

The case most nearly in point on its facts with the case here decided is Moss v. City of Winston-Salem,[15] decided by the Supreme Court of North Carolina in 1961. Wood Brothers Manufacturing Company made rotary power mowers at its plant in Illinois. It was incorporated in Illinois. It made sales of power mowers to a distributor, the Todd Company, of Norfolk, Virginia. Todd sold mowers to Farm Tractor Company, of Winston-Salem, North Carolina. One of these mowers was sold by Farm Tractor to the City of Winston-Salem and while being operated by the City the rotating blade of the mower threw a piece of a bicycle handle bar which struck and injured the plaintiff, a ten-year-old boy. Wood was joined as a defendant with the City in an action where Wood was charged with the negligent manufacture of defective and dangerous equipment. Neither the City nor Farm Tractor had ever had any dealings with Wood. It had no office or place of business in North Carolina. At the time of the accident it had no salesmen who called on customers or prospective customers in the state. Wood had no financial interest in Todd. It had no interest in and had never had

any contact with Farm Tractor, or any other business in North Carolina. It had no contact with the City. The North Carolina Court, following Putnam v. Triangle Publications, 245 N.C. 432, 96 S.E.2d 445, held that Wood did not have the minimum contacts with North Carolina as are required to give its courts juridiction over Wood in an action seeking a judgment in personam.[16]

The Broaster Company partners did no business in Alabama. The sale it made of the equipment alleged to have been defective and dangerous was made in Illinois or Louisiana, not Alabama. It had no agents or representatives in Alabama for the solicitation of business, for giving instructions as to the operation of its products, for the servicing of equipment made by it or for any other purpose. It had no office, plant or agency in Alabama. None of the partners resided there. All that can be said is that the Broaster Company produced a piece of equipment, sold and delivered it to a distributor in Louisiana having an exclusive right of resale in Alabama; and after some time and some use, the equipment was sold to Dooly in Alabama. The Alabama statute [17] requires the doing of business or the performing of work or service in the state in order to permit substituted service. We need not consider whether a broader statute would withstand a challenge on constitutional grounds.[18] We are not dealing with a statute that authorizes substituted service of process in an action for a tort committed in the state.[19] Thus we do not consider whether the tort alleged was committed, if at all, in Illinois or Alabama. There being no contractual relationship between Dooly and the Broaster Company, such cause of action as might exist would sound in tort. It is a fruit-

14. The case was removed to the federal court on the ground of diversity of citizenship.

15. 254 N.C. 480, 119 S.E.2d 445.

16. Erlanger Mills v. Cohoes Fibre Mills, 4th Cir. 1956, 239 F.2d 502; Hellriegel v. Sears Roebuck & Co., D.C.N.D.Ill. 1957, 157 F.Supp. 718.

17. Section 199(1), Title 7, Code of Alabama, supra.

18. Cf. New York Times Company v. Sullivan, supra.

19. See Mann v. Equitable Gas Company, D.C.N.D.W.Va.1962, 209 F.Supp. 571; Developments in the Law, State Court Jurisdiction, 73 Harvard L.Rev. 909, 926.

less search which seeks to find in the facts of this case those minimum contacts which must be present for Broaster Company to be doing business in Alabama so as to subject it to the jurisdiction of a district court sitting in Alabama upon the constructive service provided by the Alabama statute.

The small purchase of seasoning and supplies by Dooly from the Broaster Company is not a long enough peg on which jurisdiction can be hung. If any significance could be attached to this transaction it would not be such as would subject it to suit in Alabama. Service under the statute may be effected only where the action accrued "from the doing of such business, or the performing of such work or service, or * * * as an incident thereof * * *." This small purchase had no relation to the claim which Dooly seeks to assert against the Broaster Company. Then too this purchase was an isolated transaction. Single or isolated items of activity in a state are not enough to form the basis of jurisdiction.[20]

The last string to the Dooly bow is the contention that Metairie was the agent of the Broaster Company and the activities of Metairie in selling and servicing the Broaster equipment sold to Dooly were activities of the Broaster Company. The relation between the Broaster Company and Metairie was that of seller and buyer. The relationship between Metairie and Dooly, with respect to the Broaster equipment, was that of seller and buyer. There was no relationship, and Metairie established none, between the Broaster Company and Dooly with respect to the sale or servicing of the Broaster cooking device which Dooly bought. Nothing has been shown to establish any agency relationship. Banker Brothers Company v. Pennsylvania.[21]

The district court correctly decided that no jurisdiction had been obtained over the Broaster Company partnership and the partners composing it, and correctly quashed the service upon them. The order of the district court is

Affirmed.

---

20. International Shoe Company v. Washington, supra; Gayle v. Magazine Management Company, D.C.Md.Ala., 1957, 153 F.Supp. 861.

21. 222 U.S. 210, 32 S.Ct. 38, 56 L.Ed. 168.