**Mrs. Mamie Hallas JUPP et al.**

v.

**GLOBAL MARINE EXPLORATION COMPANY et al.**

**Civ. A. No. 13166.**

United States District Court
E. D. Louisiana,
New Orleans Division.

March 19, 1964.

Louis V. Rand, II, Murray Cleveland, New Orleans, La., for plaintiffs.

Edward B. Benjamin, Jr., Phillip Wittmann, New Orleans, La., for Marine Safety Equipment Corp.

Robert Deane, New Orleans, La., for Global Marine Exploration Co.

FRANK B. ELLIS, District Judge.

This is an action by Mrs. Mamie Hallas, widow of Stanley D. Jupp, Jr., de-

cedent, individually, as surviving spouse, and as the duly qualified tutrix of the decedent's three minor children. Defendants are Global Marine Exploration Company, Marine Safety Equipment Corporation and Aetna Casualty and Surety Company. The complaint is lodged against Aetna as the liability insurer of the Equitable Equipment Company, Inc., under the Louisiana Direct Action Statute.[1]

The complaint alleges that on February 21, 1962, the decedent was employed by Todd Shipyards Corporation in the capacity of Assistant General Superintendent at its yard in Algiers, Louisiana. At that time, the CUSS II, a navigable vessel used as a floating drilling rig, was being constructed or fabricated or assembled in a floating drydock in the Mississippi River. Certain work was being performed aboard the vessel by employees of Todd.

The complaint further alleges that while decedent was aboard the CUSS II engaged in the performance of the duties of his employment, he was caused to fall from the deck of the vessel to the deck of the drydock when the mechanical disengaging apparatus in the port lifeboat failed and the bow of the lifeboat became disengaged from the bow fall. It is asserted that the failure of the mechanical disengaging apparatus resulted from one or more defects in the apparatus and/or the installation thereof, including, among other things, a cracked collar bearing.

The lifeboat and the mechanical disengaging apparatus, it is alleged, installed on the CUSS II, was designed, or manufactured, or fabricated or assembled by Marine Safety and sold to Equitable Equipment and/or Global for installation on board the vessel.

Suit was filed in this Court and service had upon Global Marine through the C.T. Corporation, upon Aetna Casualty through the Secretary of State, State of Louisiana, and upon Marine Safety through the Secretary of State and by service upon Mr. Francis Dodd Menge, New Orleans, La.

The matter is before the Court on motion of defendant, Marine Safety, to dismiss the complaint as to it, or, in lieu thereof, to quash the returns of service of summons on it.

Marine Safety alleges that it is a New Jersey corporation; has never been and is not now qualified to do or doing business in the State of Louisiana; that it is not subject to suit or service of process within the Eastern District of Louisiana; that it is not required by law to appoint an agent for service of process and has not engaged in a business activity within the State of Louisiana; that not having engaged in a business activity in Louisiana, it is not amenable to service of process under the provisions of LSA–Revised Statutes, Title 13, Section 3471,[2]; and that plaintiffs have failed to secure a proper order of court authorizing service upon the Secretary of State; that during 1960 their total sales amounted to $284,692.00 of which $9,855.00 were sales to Louisiana customers or about two to three percent of their business operations for that year; that in 1961 sales were $425,854.00 of which $19,004.29, or about five percent, were to Louisiana customers; that during 1962 their total sales amounted to $665,412.00 of which $43,823.00, or about 6%, were to Louisiana customers; that Marine Safety does not now have a branch office, sales office, salesman or other employees located in Louisiana; does not now or

1. LSA–Revised Statutes, Title 22, Section 655.

2. Subsection (1) of Section 3471 is pertinent to this proceeding. It provides:
"The following rules supplement those governing the service of citation and other legal process in a civil action or proceeding contained in the Code of Civil Procedure:

"(1) If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state * * * may be made on any employee or agent of the corporation of suitable age and discretion found in the state. * * *"

has ever had a telephone listing in Louisiana; does not have a mailing address in the State of Louisiana; does not maintain a warehouse, stock or other property, real or personal in the state; that the Menge Company is a manufacturers' representative and advises Marine Safety from time to time of potential customers in Alabama, Mississippi, Louisiana and Texas; that Marine Safety may submit a proposal to such potential customers; that all purchase orders are addressed to Marine Safety and may be either accepted or rejected by it at Point Pleasant Beach, N. J.; that confirmation of purchase orders are sent directly to the purchaser as are all invoices and statements; that the Menge Company is not an agent and does not have power to bind Marine Safety in any way; that the only remuneration the Menge Company receives from Marine Safety is a commission on sales made as a result of information supplied to them by Menge; that Marine Safety has never advertised its equipment in Louisiana nor conducted any of its business activities in this state; and, that all sales are made in New Jersey and shipments are made directly to the purchaser without the intervention of a local agent.

Plaintiffs' opposition, basically, is that service upon the Secretary of State or upon Mr. Francis D. Menge constituted service on Marine Safety.

Thus the question is whether or not Marine Safety has ever done business or engaged in business activity in Louisiana so as to make it amenable to service of process upon the Secretary of State. The court must also determine whether or not the status of Mr. Francis D. Menge is an employee or agent of the corporation such that service upon him would constitute a valid service of process upon defendant Marine Safety. There are ample affidavits, depositions and exhibits filed into the record from which this Court could make its determination.[3]

Plaintiffs, in opposition to the motion to quash, urge a number of facts as indicating that Marine Safety has engaged in business activities in Louisiana in such a manner and to such extent as to make it amenable to service of process in this action. Plaintiffs point out that Marine Safety is a New Jersey Corporation engaged in the manufacture and sale of lifeboats, davits, winches, and associated items; that their products are sold in the United States by five individuals and/or companies to whom exclusive territories are assigned; that one of the three distributors, presently designated as "manufacturer's representative" is the J. H. Menge Company, in New Orleans; that Mr. Francis D. Menge is the owner of J. H. Menge Company; that Menge was assigned the exclusive territory consisting of Louisiana, Alabama, Mississippi and Texas; that the only office of the Menge Company is in Room 932 of The National Bank of Commerce Building, New Orleans; that since 1959 Marine Safety's name has been displayed on the door thereof; that Marine Safety's name was listed in the building's directory on the ground floor; that Mr. Menge actively solicited the sale of Marine Safety's products in Louisiana by contacting shipyards, repair yards and marine operators; that price quotations to prospective customers were submitted to the prospect either through Mr. Menge or directly by Marine Safety, and, if purchased, the prospect either sent the order directly to Marine Safety or to Menge; that Menge submitted a number of inquiries to Marine Safety and reported to Marine Safety why the business was lost to a competitor; that Menge contacted Marine Safety customers in Louisiana to determine the status of a job in progress; that Menge never took title to any

---

3. Affidavits of Hugo K. Weigel, Vice President of Marine Safety; Francis D. Menge, owner of J. H. Menge & Co.; Thomas J. Mullender, Jr., an employee of Todd Shipyards; photographs of the directory of The National Bank of Commerce Building, New Orleans and of the door of the J. H. Menge & Company office in that building; affidavit of Charles P. Battaglia, Gen. Superintendent of Todd; depositions of Francis D. Menge and Hugo K. Weigel; letters; purchase orders; etc.

of the merchandise, but, contrarily, title flowed from Marine Safety direct to the customer; that Menge accompanied the President of Marine Safety, Mr. John P. Harkrader, when he called upon customers and prospective customers in Louisiana; that occasionally Marine Safety delivered the merchandise to Louisiana on its own trucks; that Marine Safety made sales of $9,885.00 in Louisiana in 1960, $19,004.29 in 1961 and $43,823.00 in 1962; that Menge was paid a commission on all sales made to customers in Louisiana; that Menge was authorized to and did contact and "harass" delinquent accounts receivable; that the lifeboat in question was manufactured by Marine Safety and sold to Global Marine from the solicitation by Menge of the Global engineering staff in Louisiana; that the lifeboat in question was delivered on Marine Safety's truck from the plant in New Jersey (by order of Global Marine) to the Equitable Equipment yard in Madisonville, Louisiana; that Menge was a mediary in getting the matter of the transportation charges straightened out; that Menge, in accordance with Coast Guard regulations, ordered a mast and provisions tank for the lifeboat in question, as per a purchase order directed to him by Equitable Equipment; that the latter was sent to the Equitable yard in Madisonville and installed in the boat; that Menge sent Equitable a drawing prepared by Marine Safety showing the method of installation of the provision tanks; that Menge was paid a commission on the sale to Global of the boat in question, and, that Menge was also paid a commission on the sale of another lifeboat which was installed aboard the CUSS II.

It must first of all be borne in mind that each case of non-resident jurisdiction must be decided on its own facts and under the law of the forum state, Mississippi Wood Preserving Company v. Rothschild, 5 Cir. 1953, 201 F.2d 233; Dooly v. Payne, 5 Cir., 326 F.2d 941; in the light of the federally expanded concept of state jurisdiction over non-residents as pronounced in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and as amplified in McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 and in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

There are three Louisiana Appellate level cases dealing with cases arising under LSA–Revised Statutes, Title 13, Section 3471(1), Covington v. Southern Specialty Sales, Inc., La.App., 1 Cir., 158 So.2d 79, Home Gas & Fuel Company v. Mississippi Tank Company, La.App., 3 Cir., 143 So.2d 641, and Universal Carloading & Distributing Company v. Saia Motor Freight Line, Inc., La.App., 4 Cir., 156 So. 2d 608.

Covington involved two non-resident defendants, Clinton Engine Corporation of Maquoketa, Iowa, and Falls Products, Inc., of Genoa, Illinois. Clinton maintained two offices, one in New York and one in Maquoketa, it was incorporated in Michigan and did not engage in activities in Louisiana of such a nature and extent as to subject it to the necessity of compliance with local statutes establishing prerequisites to the conduct of intrastate business within the state. Clinton's district sales and service manager resided in Dallas and made calls every four or five weeks to assist the central warehouse distributor, Southern Specialty Sales Company of New Orleans, in the sale and servicing of Clinton Products; however, he did not take orders. All orders went directly to Clinton. Merchandise was shipped to Southern F.O.B. Maquoketa and Southern would then distribute the goods to the local service centers. There were 140 establishments in the state devoted to the sale and servicing of Clinton merchandise. The Court held that "[w]e unhesitatingly conclude such business activity meets the requirement of minimum contacts within the state so as to fully satisfy traditional concepts of fair play and substantial justice as expanded and enlarged in the recent United States Supreme Court decisions."

The other co-defendant, Falls Products, was an Illinois Corporation with its principal office in Genoa, Illinois. It did not have a resident salesman in Louisiana but utilized the services of a manufacturer's representative headquartered in Dallas. The manufacturer's representative visited Louisiana once or twice annually and was authorized to and did take orders from customers. They were forwarded to Falls Products' home office in Genoa for acceptance or rejection. Delivery was by common carrier. It was not disclosed the volume of Louisiana business thusly produced, but it did appear that this method of operation did result in a number of sales to Louisiana customers. The Court held that the defendant's voluntary act of sending sales representatives into this state for the express purpose of soliciting sales satisfies the requirement of minimal contact necessary to render Falls Products amenable to the jurisdiction of the courts without doing violence to traditional notions of fair play and substantial justice.

Home Gas & Fuel involved a Mississippi corporation known as the Mississippi Tank Company. The defendant in that case had not qualified to do business in Louisiana and had not appointed an agent for service of process. Suit was filed on a tort action involving one of their products and service was made upon the Secretary of State. The defendant employed no salesmen who solicited business in Louisiana; maintained no offices here; the butane tank in question was ordered by phone; the defendant sold over 100 domestic butane tanks in Louisiana. The defendant was dismissed from the suit in the lower court. The Court of Appeals reversed stating that it is not the intention of the statute to limit the effect to the particular business transaction which brings on the cause of action, but must be read in context with the entire statute which clearly contemplates that its provisions may be used when a foreign corporation is found to have engaged in any business activity in the state.

Universal Carloading involved the following facts. Goods were delivered to the Pennsylvania Railroad in New York where they were placed in a sealed car. The car was transported to Illinois where the Missouri Pacific Railroad received it and transported it to New Orleans. Saia Motor Freight delivered the goods out of the sealed car to plaintiff in Patterson, Louisiana. The goods arrived in a damaged condition and suit was filed against all three carriers. Pennsylvania moved to dismiss on grounds that they were not amenable to service of process in Louisiana. They asserted that they are not licensed to do business in Louisiana, had no agent for service of process and did not have trackage in Louisiana. Pennsylvania did maintain the typical office for solicitation of passenger and freight service business for its lines outside of Louisiana. The lower court dismissed and the appellate court held that Pennsylvania's participation in the multi-carrier interstate shipment, and the breach, if any, of its contractual or statutory duties, took place entirely outside of Louisiana and Louisiana's courts have no jurisdiction to entertain a claim for any damages resulting from any such breach of duty.

None of the above cases were appealed to the Louisiana Supreme Court. After a perusal of the cases in point it may be safely said that the policy of the Louisiana courts has been full exploitation of jurisdiction in personam over foreign corporations, all within the permissible limits of International Shoe.

In International Shoe, the doctrines of "presente" and "consent" of Pennoyer v. Neff, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565, and its progeny, were discarded as fictions and the "minimum contacts" principle was announced. The two cases to follow, McGee and Hanson, teach us that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Han-

son v. Denckla, supra, at Page 253, 78 S.Ct. at Page 1240, 2 L.Ed.2d 1283.

Dooly v. Payne, supra, 326 F.2d at Page 943, informs us that "[i]t is the quality and nature of the activity rather than mechanical tests, that are controlling in determining whether the minimum contacts test of due process has been met."

There is a wide gulf of time and technological advancement between 1877 (Pennoyer v. Neff) and 1945 (International Shoe). Progress in communications and transportation evolved into a release from the rigid rule of presence and consent to the more flexible standard of minimum contacts, Hanson v. Denckla, supra.

██ While the door of non-resident jurisdiction has been opened wider by International Shoe and McGee it has not been completely removed from its hinges, Dooly v. Payne, supra. This is a very close case on the question of non-resident jurisdiction, but after a careful review of all facts presented and of the Louisiana jurisprudence in point the court is inclined to accept jurisdiction on grounds that defendant, Marine Safety, has had such minimal contacts and has engaged in such a concerted, systematic, continuous and increasing volume of sales to purchasers in this state in such a manner that a state district court, guided by state appellate level decisions, would also accept jurisdiction, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Even under the old rule of Pennoyer v. Neff there may be jurisdiction. The corporate personality is a fiction intended to be acted upon as though it were a fact. Unlike an individual its "presence" without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it, International Shoe Co. v. Washington, supra. Whether or not Marine Safety manifested its presence in Louisiana by the authorized acts of the J. H. Menge Company is an open question which the Court need not resolve.

The cases of Nigro v. Eagle Star Insurance Company, E.D.La., 216 F.Supp. 205, or Buckley v. New York Times, Co., E.D.La., 215 F.Supp. 893, previously decided by this Court, are not at all in point. The facts of the instant case are far stronger than those found in Nigro and Buckley.

The motion to quash service of process and to dismiss will be denied. Plaintiff will be given 15 days within which to effect full, strict compliance with the provisions of LSA–Revised Statutes, Title 13, Section 3471(1). Inasmuch as a valid service may be made upon the Secretary of State, it will be unnecessary for the Court to pass upon the service, or attempted service, upon Francis D. Menge.

So ordered.