179 So.2d 220 (1965)
Sophie SIMARI and Anthony Simari, her husband, Appellants,
v.
ILLINOIS CENTRAL RAILROAD COMPANY, a corporation, and Atlantic Coast Line Railroad Company, a corporation, Appellees.
No. G-155.
District Court of Appeal of Florida. First District.
October 21, 1965.
*221 Brass, Strong, Judge & Stern, Daytona Beach, for appellants.
Edward K. Goethe, of Giles, Hedrick & Robinson, Orlando, for appellees.
CARROLL, DONALD K., Judge.
The plaintiffs in a negligence action against two railroads have taken this interlocutory appeal from an order entered by the Circuit Court for Volusia County granting the motion filed by the defendant Illinois Central Railroad Company to dismiss their complaint on the ground of insufficiency of the service of process upon the said defendant.
The ultimate question for determination in this appeal is whether the said defendant, under the circumstances described below, is so "doing business" in this state that service of process upon its district passenger agent gave the Circuit Court jurisdiction in this action over the said defendant.
The factual background out of which the order appealed from arose is essentially as follows: The plaintiffs, Mr. and Mrs. Simari, residents of Volusia County, filed this action for damages against the Atlantic Coast Line Railroad Company and the Illinois Central Railroad Company, hereinafter referred to as Illinois Central, on account of injuries suffered by Mrs. Simari in an accident that occurred in St. Louis, Missouri, while she was a passenger on a train being operated by Illinois Central. The plaintiffs allege in their complaint that Mrs. Simari's injuries were proximately caused by Illinois Central's negligent operation of the train. At the present stage of this litigation we are not, of course, concerned with the merits of the plaintiffs' cause of action.
A summons in this cause was attempted to be served on Illinois Central by serving the summons upon one C.J. Petty, the Illinois Central's district passenger agent in Miami, Florida. Illinois Central then filed a motion to dismiss the said complaint, upon three grounds: lack of jurisdiction over the subject matter, insufficiency of service of process, and failure to state a cause of action.
In the order appealed from herein the Circuit Court granted Illinois Central's said motion on the ground that the service of process upon it was insufficient.
The court's said ruling was based upon several affidavits and Illinois Central's answers to certain interrogatories and requests for admissions, which established the following facts: Since 1935 Illinois Central has maintained two offices in Florida, one in Miami, with seven employees, and the other in Jacksonville, with six employees. The duty of these thirteen employees is to solicit passenger and freight business for transportation over the lines of Illinois Central outside of the State of Florida, and to arrange for the routing of such passengers and freight. The sole duty of the said Petty, upon whom the attempted service of process was made, was the solicitation of passenger business. The said officers do not issue bills of lading or collect freight charges in Florida and do not sell passenger tickets. Neither office settles claims or handles cash transactions. Illinois Central pays no taxes in this state and has not obtained a certificate of authority to do business in Florida, nor has it designated anyone as its agent for the service of process in this state. As mentioned above, the accident involved in the instant accident occurred *222 in St. Louis, Missouri. All of the members of the Illinois Central crew operating the train at that time were residents of the State of Illinois.
Upon the basis of the foregoing facts, the Circuit Court granted Illinois Central's motion to dismiss on the ground that the service of process upon it was insufficient, and this interlocutory appeal followed.
The issue for determination in this appeal  the sufficiency vel non of the service of process upon Illinois Central in this case must, from the judicial perspective, be considered as a two-fold question: first, whether such service comports with the due process requirement of the 14th Amendment to the United States Constitution; and, secondly, if that service does so comport, the said service complies with the requirements of the statutory provisions in Florida providing for the service of process upon foreign corporations.
Taking up the first question, concerning the application of the due process clause, we naturally turn first to the decisions of the United States Supreme Court, the final authority in the construction of the U.S. Constitution. Unfortunately for the certainty of the law, however, those decisions during the past century have undergone a far-reaching evolutionary process of change, so that every decision of that court in this field must be evaluated in the light of its place in that evolutionary process. In fact, this process has become so marked and so decisive in judicial considerations that the United States Supreme Court has sometimes adverted to it in its opinions in this field. For instance, in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the United States Supreme Court said the following:
"Since Pennoyer v. Neff, [5 Otto 714], 95 U.S. 714, 24 L.Ed. 565, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned `consent,' `doing business,' and `presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. [State of] Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, [161 A.L.R. 1057], the Court decided that `due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice"' Id., 326 U.S. at 316, 66 S.Ct. at [page] 158.
"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."
The most recent development in the evolutionary process of the U.S. Supreme Court decisional law in this field seems to be a growing recognition of the real injustice done to residents of the forum state who *223 have dealt with a foreign corporation in good faith only to find that they must travel many miles to sue in a court that could obtain jurisdiction of the corporation. One of the cases manifesting this concern is Travelers Health Association v. Com. of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). After discussing the last-mentioned case, the Supreme Court of Florida in State ex rel. Guardian Credit Indem. Corp. v. Harrison, 74 So.2d 371 (1954), described this recent development as follows:
"To summarize, the Supreme Court of the United States has become convinced that the difficulty with a purely mechanical test in cases of this nature is that it diverts the attention of the court from the overall plan of operation of a defendant foreign corporation. Instead, such a test requires concentration upon individual criteria of `presence' within the forum state, which, when they are added up to fall above or below the line, result in making the case comparatively easy to decide, but may also result in real injustice to residents of the forum state who have dealt with the foreign corporation in good faith only to find, after becoming acquainted with many tailor-made `jurisdictional' facts of which they could not have been apprised when the business dealings sued upon were in progress, that the corporation has not been `present' in their home state at all, and they must therefore travel many miles to sue, or abandon the cause altogether. If the amount involved is small, the latter alternative is almost certain to be selected, as many foreign corporations habitually incurring only small individual liabilities well know. See Foreign Corporations  State Boundaries for National Business, 59 Yale L.J. 737."
In recent years the appellate courts of Florida appear to have recognized and applied the International Shoe doctrine as expanded and clarified in the above later decisions. As an example, in State ex rel. Guardian Credit Indem. Corp. v. Harrison, supra, the Supreme Court of Florida said:
"The International Shoe doctrine adopts a test originally formulated by Judge Learned Hand in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, in making relevant an `"estimate of the inconvenience[s]" which would result to the corporation from a trial away from its "home" or principal place of business * * *', and it requires only that the corporation have such minimum contacts with the forum that the maintenance of suit against it there `does not offend "traditional notions of fair play and substantial justice."'".
See also Wm. E. Strasser Construction Corp. v. Linn, 97 So.2d 458 (Fla. 1957), Oxley v. Zmistowski, 128 So.2d 186 (Fla.App. 1961), and Woodring v. Crown Engineering Co., 141 So.2d 816 (Fla.App. 1962). The opinion of the Second District Court of Appeal in the last-cited case contains a scholarly discussion of the above federal and state decisions.
The principal authority relied upon by the appellees in support of the order appealed from is the decision of the United States Supreme Court in Green v. Chicago, Burlington and Quincy Railway Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916 (1907). The essential facts in that case are so closely parallel to those in the case at bar, that that decision, if accepted at face value without relating it to the evolutionary process described above, would probably be decisive of the present appeal, but, of course, fundamental principles of judicial process require that the Green decision be so related.
In the Green case the plaintiff in error, Green, a citizen of Pennsylvania, brought an action in the United States Circuit Court for the Eastern District of Pennsylvania to recover damages for personal injuries incurred in Colorado through the negligence of the defendant in error, a railroad corporation created under the laws of Iowa. The attempted service upon the railroad *224 was made by service upon one Harry E. Heller, as an agent of the railroad. The Circuit Court held the service to be insufficient because the railroad was not doing business in the district. Green took a writ of error to the United States Supreme Court, which affirmed the judgment on the ground that the defendant railroad was not doing business in Pennsylvania, saying:
"* * * But to obtain jurisdiction there must be service, and the service was upon the corporation in the eastern district of Pennsylvania. Its validity depends upon whether the corporation was doing business in that district in such a manner and to such an extent as to warrant the inference that, through its agents, it was present there."
In this Green case the Supreme Court pointed out that the business of Heller, the agent upon whom the service of process was had, was to solicit and procure passengers and freight to be carried over the defendant's lines, the easternmost point of which was in Chicago, Illinois. Finally, the United States Supreme Court held as follows:
"The business shown in this case was, in substance, nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute `doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it."
In evaluating the Green decision as a judicial precedent, we should place it in the proper historical perspective in the light of the evolutionary process as explained by the Supreme Court in the above quotation from the McGee case. The Green case was decided long after the case of Pennoyer v. Neff, laying down the "presence theory" and long before the International Shoe case. The language which we have quoted above from the Green decision indicates that the Supreme Court was endeavoring to make its ruling compatible with the "presence theory" announced in Pennoyer v. Neff.
Furthermore, with regard to the Green decision as a judicial precedent, we note the statement of the Supreme Court last quoted from the Green decision that it was not "undertaking to formulate any general rule defining what transactions will constitute `doing business' in the sense that liability to service is incurred * * *." Perhaps in saying this the court had in mind the one general proposition adhered to by federal and state courts in this field that each case must be resolved on the basis of the facts revealed by its own record.
In view of the historical development and the present state of the decisional law in this controversial field, as delineated above, we have reached the conclusion that the proper rule to be applied in the circumstances of the case at bar is the rule announced by the United States Supreme Court in the International Shoe case, supra, and followed in many subsequent federal and Florida decisions. That rule, as we understand it, is that due process requires only that, in order to subject a defendant to a judgment in personam, if he is not present within the territory of the forum, the defendant must have certain "minimum contacts" with it, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." This rule should be applied in conjunction with the universally-recognized principle that each case must be resolved on the basis of the facts revealed by the record in that case. We also recognize that there is a decisional trend toward expanding the permissible scope of state jurisdiction over foreign corporations, as pointed out in the above quotation from the McGee case.
We thus are in general agreement with the appellants' contentions as to the rules that should be applied in this appeal, but that does not necessarily mean, of course, that the service of process in the instant *225 case is sufficient, because such determination depends upon the facts revealed in this record. In their reply brief the appellants list three factors "which appear admitted and generally agreed upon" and having to do with Illinois Central's activities in Florida related to the cause of action being sued upon: (a) that the plaintiff Mrs. Simari purchased her ticket in Florida; (b) that her trip commenced in Florida; and (c) that Illinois Central maintains two permanent offices in Florida with 13 employees "whose activities were solely directed to soliciting passengers and freight on interstate trips whose points of origin were in the State of Florida and toward routing such passengers and freight."
Out of this welter of decisional law in the evolutionary process described above, we have reached the conclusion that the proper rule to be applied in the present case is the International Shoe doctrine as modified and clarified by later decisions of the United States Supreme Court. Such application to a given state of facts, however, is far from easy, for that doctrine does not provide a mechanical or quantitative test. As the Supreme Court itself declared in the landmark case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945):
"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less."
Having thus decided upon the doctrine that should be applied in the present case, we examine the cases cited by the parties to this appeal to see whether any of the cases should be regarded as binding precedents under the facts involved in the case at bar.
One of the strongest cases relied on by the appellants is State ex rel. Guardian Credit Indem. Corp. v. Harrison, 74 So.2d 371 (1954), in which the Supreme Court of Florida applied the International Shoe doctrine as modified by later decisions. In that case the defendant, Guardian, contended, as Illinois Central does in the instant case, that the mere solicitation of business by a foreign corporation in the forum state is not sufficient activity upon which to base substituted service, under the "mere solicitation rule" established in People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918). On their part the plaintiffs invoked the International Shoe case as controlling because of the similarity of the facts therein. Guardian then argued that the facts were dissimilar. With regard to those contentions the Supreme Court of Florida declared (along the lines of our comments above concerning the Green case cited by the appellees herein):
"Both arguments thus assume that there has been no significant development in this area of the law since the People's Tobacco case, cited above, was decided, and if this assumption were in our opinion correct, we would devote more space to a determination of whether or not the facts of this case are close enough to those in the International Shoe case to be controlled thereby. But our research has convinced us that the International Shoe case and the case of Travelers Health Association v. [Com. of] Virginia, 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 represent a change in theory from previous pronouncements on the subject by the Supreme Court of the United States, and that this newer approach must be taken in the case before us."
The Supreme Court then upheld the service of process upon Guardian by applying the "newer approach" provided for under the International Shoe and Travelers Health Association cases.
*226 Another Florida decision supporting the appellants' contentions in this appeal is Woodring v. Crown Engineering Co., 141 So.2d 816 (Fla.App. 1962). In that case the appellant, Woodring, filed an action in a circuit court for commissions due him under a contract of employment with the defendant, a foreign corporation organized under the laws of the State of Montana. To Woodring's amended complaint the corporation filed a motion to dismiss, two of the grounds of which were that the court lacked jurisdiction of the subject matter, and that the corporation, which was organized under the laws of Montana, was not subject to service of process within the State of Florida. The circuit court granted the said motion and entered a final judgment for the defendant, which judgment Woodring appealed to the District Court of Appeal, Second District of Florida.
In the Woodring case the plaintiff asserted that he was employed in June, 1956, by the president of the corporation, a machinery manufacturer which had its headquarters in Billings, Montana, and was designated as the national sales manager; that on or about September 15, 1956, Woodring, a resident of St. Petersburg, Florida, as such employee advertised in the newspapers of St. Peterburg, promoting the sale of the defendant's machinery and thereafter received inquiries from a number of persons, to some of whom he made sales of the said machinery. After a discussion of the applicable law, including the expansion of the doctrine enunciated of Pennoyer v. Neff as described in the McGee case, supra, the District Court of Appeal held that the facts clearly showed the corporation "had taken sufficient steps within the purviews of Ch. 47, supra, to establish a business venture in the State of Florida." The court further held that the circuit court had acquired jurisdiction of the parties by service of process obtained under Sec. 47.16, reversed the order dismissing Woodring's complaint, and remanded the cause for further proceedings. To the same effect see the later decision of the same court in Steel Joist Institute, Inc. v. J.H. Mann, III, Inc., 171 So.2d 625 (1965), and that of the Third District Court of Appeal in Lake v. Lucayan Beach Hotel Company, Limited, 172 So.2d 260 (1960).
Probably the most persuasive authority supporting the appellants' contentions in the present appeal is the landmark case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), the doctrine of which we have discussed earlier in this opinion. Turning our attention now to the precise factual situation of that case as to which the United States Supreme Court held that the International Shoe Company maintained the necessary "minimum contacts" with the State of Washington, we find the following facts recited in the court's opinion: The International Shoe Company was a Delaware corporation having its principal place of business in St. Louis, Missouri, and was engaged in the manufacture and sale of shoes and other footwear. The corporation had no office in the State of Washington and made no contracts for the sale or purchase of merchandise there. During the years 1937 to 1940, the period in question, the corporation employed from eleven to thirteen salesmen under the direct supervision and control of sales managers located in St. Louis. These salesmen resided in Washington and their principal activities were confined to that state. They were compensated by commissions based upon the amount of their sales.
In the International Shoe case the United States Supreme Court announced the following principle:
"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of *227 or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. Compare International Harvester Co. [of America] v. [Com. of] Kentucky, 234 U.S. 579 [34 S.Ct. 944, 948, 58 L.Ed. 1484], supra, with Green v. Chicago, B. & Q.R. Co. [205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916], supra, and People's Tobacco Co. v. American Tobacco Co. [246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas. 1918C, 537], supra. Compare Connecticut Mut. L. Ins. Co. v. Spratley, supra (172 U.S. [602], 619, 620, 19 S.Ct. 308 [43 L.Ed. 569, 575]) and Commercial Mut. Accident Co. v. Davis [213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782], supra, with Old Wayne Mut. Life Association [of Indianapolis, Indiana] v. McDonough [204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345], supra. See 29 Columbia L. Rev. 187-195."
In the paragraph just quoted, as we read it, the Supreme Court indicates that the holding in the Green case, supra (upon which the appellee principally relies herein) and in the People's Tobacco Co. case, supra  that the mere solicitation of business in a state is insufficient to render a foreign corporation subject to the jurisdiction of that state's courts  has been receded from in later decisions of the Supreme Court.
Relating the foregoing principle to the above facts concerning the activities of the International Shoe Company in the State of Washington, the United States Supreme Court held:
"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure."
It is our considered judgment that the facts involved in the case at bar fall squarely within the doctrine and holding of the United States Supreme Court in the just-discussed International Shoe case. It seems to us that Illinois Central has maintained sufficient "minimum contacts" to the State of Florida, comparable to the contacts maintained by the International Shoe Company in the State of Washington. Furthermore, to borrow the Supreme Court's language quoted above, we think that Illinois Central's operations establish sufficient contacts or ties with the State of Florida "to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations" which Illinois Central has incurred there. Having reached the conclusion that the instant case is governed by the holding in the International Shoe case, there is no need to invoke the subsequent decisions of the United States Supreme Court, which we have discussed earlier in this opinion, such as the McGee case, supra, which have greatly expanded the said holding in the direction of a broader susceptibility of foreign corporations to the jurisdiction of state courts.
Our conclusion, then, as to the first question presented for our determination in this appeal, is that the subjection of Illinois Central to service of process in this *228 case does not contravene the 14th Amendment to the United States Constitution or any other provision thereof.
We then turn to the second question before us  whether the service of process in the case at bar was in conformity with the statutes of this state providing for the service of process upon foreign corporations. The provisions in question are Sections 47.17 and 47.171, Florida Statutes, F.S.A.
Section 47.17 provides in pertinent part that, if a foreign corporation shall have none of certain enumerated officers or agents in this state, "service may be made upon any agent transacting business for it in this state." Section 47.171 provides in pertinent part that, if a foreign corporation fails to comply with certain statutes relating to the designation of a place for the service of process, process directed to the said corporation "may be served upon any agent of such foreign corporation transacting business for it in Florida."
As mentioned early in this opinion, in this case the summons directed to Illinois Central was served upon C.J. Petty, who was the Illinois Central's district passenger agent in Miami. There is no real question but that the above statutory conditions for service upon an agent "transacting business for it" in Florida were fulfilled, so the only remaining question is whether the said Petty was, at the time of such service, "transacting business" for Illinois Central in this state. In our opinion, in the light of the Florida and federal cases discussed above under the first point on appeal, Petty was "transacting business" in this state for Illinois Central at the said time, and hence the said service of process was effectively made upon the said railroad under either Section 47.17 or 47.171 as well as in accordance with constitutional provisions.
We conclude, therefore, that the Circuit Court erred in entering the order appealed from dismissing the plaintiff's complaint for insufficiency of service of process, and so that order must be and it is reversed and the cause is remanded with directions for the reinstatement of the plaintiffs' cause and for further proceedings consistent with the views herein expressed.
Reversed and remanded with directions.
WIGGINTON, Acting C.J., and STURGIS, J., concur.