Jerome **PHILLIPS**, Appellant,

v.

**HOOKER CHEMICAL CORPORATION,**
Appellee.

No. 23407.

United States Court of Appeals
Fifth Circuit.
March 15, 1967.

Robert Orseck, Nichols, Gaither, Beckham, Colson, Spence & Hicks, Miami, Fla., for appellant.

W. C. Blake, Jr., Macfarlane, Ferguson, Allison, Kelly & Himes, Tampa, Fla., for appellee.

Before COLEMAN and DYER, Circuit Judges, and ESTES, District Judge.

DYER, Circuit Judge:

This is an appeal by the plaintiff Phillips, in a personal injury diversity of citizenship action, from a final order of the district court, which quashed service of process upon the defendant Hooker Chemical and dismissed the complaint upon the ground that the defendant was not "doing business" or engaged in a "business venture" in Florida, was not amenable to service of process through the Secretary of State, and was not subject to jurisdiction of the Florida courts, pursuant to Sections 47.16 [1] and 47.30,[2] Florida Statutes, F.S.A.

---

1. "47.16 Service of Process upon nonresident engaging in business in state.— "(1) The acceptance by * * * all foreign corporations, * * * of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, * * * shall be deemed equivalent to an appointment by such * * * foreign corporations of the sec-

2. See note 2 on page 191.

The complaint, cast in negligence and breach of warranty counts, alleged that the defendant manufactured flake caustic soda and, although it was a nonresident, the defendant was doing business in Florida. Further, that plaintiff's employer, Snively Groves, Inc., had periodically purchased drums of the soda for use by its employees in cleaning the premises and equipment at its plant; that, while plaintiff was depositing some soda in a vat of warm water the flakes adhered together, causing a large amount of the mixture to fall into the water and violently explode, causing injury to the plaintiff.

Based upon the affidavit of defendant's group vice-president, the defendant's answers to interrogatories propounded by the plaintiff and the deposition of defendant's sales representative, the district court granted the defendant's motion to quash and dismiss.

The evidence on the jurisdictional issue is not in dispute. The defendant is a New York corporation with its principal place of business in New York City. It has never qualified to do business in Florida, nor has it designated any agent for the service of process within the state of Florida. It does not have any warehouse or office and owns no property,

tangible or intangible, within the State of Florida.

The defendant's salesmen and other employees visit the State of Florida from time to time for the purpose of soliciting sales, but it maintains no sales staff in Florida. The defendant has sold its caustic soda to Florida purchasers for a number of years and Snively Groves, Inc. has purchased the defendant's product for some years through one of defendant's customers.

The defendant's salaried sales representative, a resident of Georgia, spends forty to fifty percent of his total working time in Florida to increase sales and purchases of defendant's products in Florida. He calls upon customers and prospective customers and attempts to secure their business. He answers any questions that the customers may have and tries to increase the penetration in an account. A major portion of his time is spent calling upon approximately thirty regular customers with whom he is familiar. If a customer makes a complaint about the product to the sales representative, he forwards the information to the company's technical service department in Niagara Falls, New York. While calling on customers to promote sales for defendant he occasionally uses promotional

retary of state of the state as the agent of such * * * foreign corporations upon whom may be served all lawful process in any action, suit or proceeding against them, or either of them, arising out of any transaction or operation connected with or incidental to such business or business venture, and the acceptance of such privilege shall be signification of the agreement of such * * * foreign corporations that any such process against them or either of them, which is so served shall be of the same legal force and validity as if served personally on such persons or foreign corporations. Service of such process shall be in accordance with and in the same manner as now provided for service of process upon nonresidents under the provision of § 47.30. * * *"

2. "47.30 Method of service upon nonresident.
"Service of such process shall be made by the plaintiff or his attorney by either leaving a copy of the process with a fee

of two dollars in the hands of the secretary of state, or in his office, or by mailing a copy of such process with a fee of two dollars to the secretary of state and such service shall be sufficient service upon a defendant who has appointed the secretary of state as his agent for the service of such process; provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff, or his attorney, to the defendant, and the defendant's return receipt and the affidavit of the plaintiff, or his attorney, of compliance herewith are filed with the papers in the case on or before the return day of the process or within such further time as the court may allow, * * * Proof of service of process on the secretary of state shall be by a copy of notice of said secretary accepting such process."

literature and forwards price quotations, but does not write up the order himself. The purchase order is sent directly by the customer to the defendant's home or sales office, and the product is shipped into Florida. After communicating with the sales manager the representative quotes prices. He furnishes customers chemical data sheets and handling guides on request.

The sales representative is on an expense account and plans his own itinerary subject to directions from the sales office in New Orleans.

The caustic soda here involved was probably part of a shipment delivered to Snively Groves, Inc. by Traylor Chemicals and Supply Company, a customer of Hooker.

On this factual background the sole question is whether or not defendant Hooker is amenable to service as a foreign corporation doing business within the State of Florida.

■ It is plaintiff Phillips' burden to show that the defendant Hooker, a foreign corporation, is doing business in Florida, and that the cause of action upon which the suit is brought arose out of the activities of Hooker within Florida. Zirin v. Charles Pfizer and Co., Inc., Fla.1961, 128 So.2d 594; Amphicar Corporation of America v. Gregstad Distrib. Corp., Fla.App.1962, 138 So.2d 383; Fawcett Publications Inc. v. Rand, Fla. App.1962, 144 So.2d 513; Young Spring and Wire Corp. v. Smith, Fla.1965, 176 So.2d 903.

Phillips contends that it met its burden on both counts by establishing that Hooker carried on activities in Florida which are systematic and continuous and have been throughout the years; that these activities resulted in a volume of interstate business in the course of which Hooker received the benefits and protection of the law of Florida; and that Phillips' injury resulted from the use of Hooker's product.

Hooker answers that this is a case of mere solicitation and that such activity is not sufficient to subject it, as a foreign corporation, to the jurisdiction of the Florida courts by substituted service under Section 47.16.

■ Each case is to be decided on its own bottom under the law of the forum state. Dooley v. Payne, 5 Cir. 1964, 326 F.2d 941; Mason v. Mason Products Company, Fla.1953, 67 So.2d 762. The Florida courts have given a liberal application in actual practice to Section 47.16. The Florida "doing business" statutes are construed as broadly as consistent with due process. Delray Beach Aviation Corporation v. Mooney Aircraft Co., Inc., 5 Cir. 1964, 332 F.2d 135.

■ Since the advent of International Shoe Co. v. State of Washington, 320 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, which laid to rest the doctrines of "presence" and "consent" found in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, the principle of "minimum contacts" has been the applicable test in Florida. "It is the quality and nature of the activity rather than mechanical tests, that are controlling in determining whether the minimum contacts test of due process has been met * * *" Dooley v. Payne, supra.

McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, followed International Shoe, and in reviewing the decisions on due process in this area, the court said: "Looking back over this long history of litigation, a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents."

Recognizing the inapplicability of the "mere solicitation" rule and the "solicitation plus" rule, the Supreme Court of Florida observed that these criteria are premised on the view that there has been no significant development in the law concerning substituted service since the earlier era of People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587. Noting that *International Shoe* represents a change in theory from previous pronouncements on the subject, the court found the jurisdictional requirements to be whether a for-

eign corporation has such minimum contacts with the forum that the maintenance of this suit against it there does not offend traditional notions of fair play and substantial justice; whether the corporate activities within the forum have been continuous and systematic or only single or isolated acts; and whether or not the activities give rise to the liabilities sued upon. State ex rel. Guardian Credit Indemnity Corp. v. Harrison, Fla.1954, 74 So.2d 371.

The only recent Florida case that seemingly is astray is Lake v. Lucayan Beach Hotel Company, Fla.App.1965, 172 So.2d 260. The court there, apparently content to rely on Green v. Chicago, Burlington & Quincy R. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, that mere solicitation is not sufficient to subject a foreign corporation to substituted service of process, nevertheless held that the utilization of an advertising firm in Florida, the maintenance of an apartment to entertain travel agents to produce business through their offices, and an office to which correspondence could be directed, was more than mere solicitation "and shows actual business activity carried on in this State even though that business is mainly directed toward procurement of customers for its hotel."

In Simari v. Illinois Central Railroad Company, Fla.App.1965, 179 So.2d 220, reversed on other grounds sub nom. Illinois Central Railroad Company v. Samari, Fla.1966, 191 So.2d 427, the court, in disposing of the contention that *Green* was decisive, placed it "in the proper historical perspective in the light of the evolutionary process as explained by the Supreme Court in the * * * McGee case. The Green case was decided long after the case of Pennoyer v. Neff, laying down the 'presence theory' and long before the International Shoe case." 179 So.2d at 224. The court then added "that the holding in the Green case * * * and in the People's Tobacco Co. case, * * *—that the mere solicitation of business in a state is insufficient to render a foreign corporation subject to the jurisdiction of that state's courts—has been receded from in later decisions of the Supreme Court." Id. at 227.

■■ The regular calls of Hooker's representative on the distributors of Hooker's products in Florida promoting the sale of Hooker's product, furnishing them with technical information and handling guides, spending forty to fifty percent of his working time in Florida attempting to penetrate the available market were not single or isolated, but long and continuous systematic activities constituting those minimum contacts, without which the "due process" clause of the Fourteenth Amendment would prevent state exercise of jurisdiction over Hooker. The claim for relief arose out of the use in Florida of Hooker's product. Phillips lives in Florida. Presumably the medical and accident witnesses reside in Florida; Hooker's representative spends about as much time in Florida as in Georgia, and the regular customer of Hooker who sold Hooker's product to Phillips' employer resides in Florida. It is apparent that Hooker has the requisite minimum contacts with Florida, the claim for relief arose there, and the maintenance of the action there "does not offend traditional notions of fair play and substantial justice." Wm. E. Strasser Construction Corp. v. Linn, Fla.1957, 97 So.2d 458; Oxley v. Zmistowski, Fla.App.1961, 128 So.2d 186; Woodring v. Crown Engineering Co., Fla. App.1962, 141 So.2d 816; Amphicor Corporation of America v. Gregstad Distributing Corporation, supra; Steel Joist Institute, Inc. v. J. H. Mann III, Inc., Fla.App.1965, 171 So.2d 625; Lake Erie Chemical Co. v. Stimson, Fla.App.1965, 181 So.2d 587.

We conclude that as Florida construes its Act, Hooker was "doing business" within the State of Florida at the time this suit was commenced, so as to render it amenable to process and the jurisdiction of the District Court. It was error to grant Hooker's motion to quash and dismiss.

Reversed and remanded.