Nolan GUILLOT, Plaintiff,

v.

SOUTHERN PACIFIC COMPANY, Atlantic Coast Line Railroad, Norfolk and Western Railroad, and Southern Railway Company, Defendants.

Civ. A. No. 67–1131.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 27, 1968.

Nathan Greenberg, Gretna, La., for plaintiff.

Guy Lyman, Jr., Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., for defendants.

CASSIBRY, District Judge:

This cause came on for hearing on March 20, 1968 on motion of Seaboard Coast Line Railroad Company, successor to, and Atlantic Coast Line Railroad Company, defendant, to dismiss or alternatively to quash the return of service of process. The motion was argued by counsel for the respective parties and submitted.

Whereupon, and upon due consideration thereof:

It is ordered that the motion of Seaboard Coast Line Railroad Company, successor to,. and Atlantic Coast Line Railroad Company, defendant, be and the same is hereby, denied.

It is further ordered that, unless good cause is shown to the contrary on or before June 12, 1968, the order of this Court dated November 9, 1967 granting the motion of Norfolk and Western Railway Company to dismiss will be vacated and the motion will be denied.

## REASONS

Plaintiff brought this action to recover damages for injuries allegedly sustained when a door of a freight car, owned by the defendant, Atlantic Coast Line Railroad (Atlantic), fell from the car and struck him. At the time he was engaged in performing the duties of his employment at the railroad siding of his employer, Johns-Manville Products Corporation, New Orleans, Louisiana.

The affidavits attached to the motions filed by defendants disclose that the railroad car involved in this suit, ACL 53013, was received empty by Atlantic at Jarratt, Virginia on September 5, 1966, and placed on an interchange track for movement by Norfolk and Western Railway Company (Norfolk) to the Johns-Manville Products Corporation plant in Jarratt, Virginia. On September 6, 1966 the car was loaded and seals affixed by Johns-Manville employees. ACL 53013 was then returned to the interchange track in Jarratt, Virginia by Norfolk on September 7, 1966, and redelivered to Atlantic. On September 8 the railroad car left Jarratt and moved over the line of Atlantic to Atlanta, Georgia, where it was delivered to the Southern Railway on September 10.

On July 1, 1967 Atlantic was merged into Seaboard Air Line Railroad Company, the surviving corporation, which continued its corporate existence under the name of Seaboard Coast Line Railroad Company (Seaboard). Like its predecessor, Seaboard is a Virginia corporation with its principal place of business outside of Louisiana. Since the merger, Seaboard's activities in, and contacts with Louisiana are identical with those of Atlantic.

Norfolk is also a Virginia corporation, and like Seaboard owns no trackage in Louisiana, has no agent for service of process here and is not licensed to do business in this State. Neither railroad operates trains within the State, however both maintain an office in New Orleans for the purpose of soliciting traffic over their lines located entirely outside of Louisiana. Neither railroad has sought to qualify to do business in Louisiana as a foreign corporation nor have they appointed an agent upon whom process might be served within the State.

Defendants presence within Louisiana is and has always been restricted to traffic solicitation. They conclude that they are not doing business within the State and therefore are not amenable to service of process and the jurisdiction of this Court.

The issue then becomes two-fold. First, whether there is statutory authority in Louisiana for the assertion of jurisdiction by a state court over these foreign corporations, and secondly, if there is, would such assertion be in accord with the due process requirements of the United States Constitution.

■ Our jurisdiction is based on diversity of citizenship, 28 U.S.C.A. § 1332

(a) (1), however, it will not be asserted over a foreign corporation unless the Louisiana Courts would do so. Stanga v. McCormick Shipping Corp., 268 F.2d 544, 548 (5 Cir. 1959); Connor v. New York Times Co., 310 F.2d 133 (5 Cir. 1962).

Defendants insist that the courts of Louisiana would not assert jurisdiction under the present facts, and cite as authority Universal Carloading & Distributing Co., Inc. v. Saia Motor Freight Line, Inc., 156 So.2d 608, 609 (La.App. 1963).

Universal involved the following: goods were delivered in New York to the Pennsylvania Railroad and placed in a sealed box car. The Pennsylvania Railroad transported the car to Illinois where the Missouri-Pacific Railroad received it and transported it to New Orleans. Saia Motor Freight removed the goods from the sealed car and delivered them to plaintiff in Patterson, Louisiana. The goods arrived damaged, and suit was filed against the three carriers. Pennsylvania moved to dismiss, contending that they were not amenable to service of process in Louisiana since they owned no trackage within the state, were not licensed to do business in Louisiana, and hadn't appointed an agent for service of process. Pennsylvania did maintain an office for passenger and freight solicitation over its lines outside of Louisiana. The appellate court held Pennsylvania's "participation in the subject multi-carrier interstate shipment, and any breach of its contractual or statutory duties, took place entirely outside of Louisiana, and the Louisiana courts have no jurisdiction to entertain a claim for any damages resulting from any such breach of duty." In support, the court cited W. H. Hodges & Co. v. Pennsylvania R. Co., 171 La. 699, 132 So. 115 (1931) which held "that the defendant railroad company being a nonresident corporation not admitted to do and not doing any business within the state is not amenable to the process of the state in an action ex delicto arising in another state."

In both *Universal Carloading* and *W. H. Hodges & Co.*, the courts reached their holdings after an examination of the then current legislation and the subsequent determination that the Louisiana Legislature had not, as yet, seen fit to confer jurisdiction upon the state courts over foreign corporations engaged in these particular type activities. In 1964, after both cases were decided, Act. No. 47, R.S. 13:3201 was passed. In part, this Act reads:

> "A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's * * * (d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; * * *."

I am convinced that today the Louisiana courts, with the present facts before them, would assert jurisdiction over these foreign corporations.

There remains only to consider whether the assertion of jurisdiction would violate the due process requirements of the United States Constitution. In support of their contention that such assertion would violate due process, defendants rely upon Green v. Chicago, Burlington and Quincy Railway Company, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916 (1907).

*Green*, a citizen of Pennsylvania, brought suit in the United States Circuit Court for the Eastern District of Pennsylvania to recover for personal injuries sustained in Colorado through the negligence of a railroad incorporated under the laws of Iowa. The lower court held the corporation was not doing business in Pennsylvania and the United States Supreme Court in affirming the judgment, said:

> "The business shown in this case was, in substance nothing more than that

of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it."

In *Green*, the only contact with Pennsylvania was the solicitation of interstate business, whereas in the present case, not only do defendant railroads solicit business within Louisiana, but the alleged damage was sustained in this state. The facts, then, are easily distinguishable.

Nevertheless, I believe an historical evaluation of *Green* in light of the expanding scope of state jurisdiction over nonresidents as evidenced by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, discloses a departure by the Supreme Court from the "mere solicitation of business" rule.

In McGee v. International Life Insurance Company, the Supreme Court referred to this evolutionary process:

"Since Pennoyer v. Neff, [5 Otto 714,] 95 U.S. 714, 24 L.Ed. 565, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' Id., 326 U.S. at page 316, 66 S.Ct. at page 158."

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

In the landmark case of *International Shoe Company*, the Supreme Court spoke of a corporation's obligations as follows:

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

This Court agrees with the Florida District Court of Appeals in Simari v. Illinois Central Railroad Company, 179 So.2d 220, when after quoting the above paragraph concluded:

" * * * as we read it, the Supreme Court indicates that the holding in the

Green case &ast; &ast; &ast; that the mere solicitation of business in a state is insufficient to render a foreign corporation subject to the jurisdiction of that state's courts—has been receded from in later decisions of the Supreme Court."

Proof of this recession might be found in Travelers Health Association v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) when Mr. Justice Douglas, in a concurring opinion wrote "Where the corporate project entails the use of one or more people in the state for the solicitation of business, in my view it does no violence to the traditional concept of due process to allow the state to provide protective measures governing that solicitation."