**FLYING SAUCERS, INC., a Florida Corporation, Plaintiff-Appellant,**

v.

**Shearn MOODY, Jr., Defendant-Appellee.**

**No. 28052.**

United States Court of Appeals Fifth Circuit.

Jan. 27, 1970.

Rehearing Denied Feb. 19, 1970.

Certiorari Denied May 18, 1970. See 90 S.Ct. 1692.

James F. Dougherty, Henry H. Taylor, Jr., Robert J. Paterno, Taylor, Brion, Buker, Hames, Greene & Whitworth, Miami, Fla., for appellant.

William D. Decker, A. R. Schwartz, Markwell, Stubbs, Decker, Dalehite & Youngblood, Galveston, Tex., Ferrell & Young. Miami, Fla., for appellee.

Before JOHN R. BROWN, Chief Judge, TUTTLE and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal from an order dismissing a plaintiff's suit for the purchase price of a vessel, such dismissal being based upon a motion to dismiss and quash service under Florida's Long-Arm Statute, Fla.Stats. § 48.181, F.S.A.[1]

Since no evidentiary hearing was held, but the trial court entered the order of dismissal on the simple motion alleging that the defendant was a resident of the State of Texas and had been served only by mail, we must test the correctness of this order quashing service and ordering a dismissal of the action by the contents of the complaint, together with the affidavit attached thereto. There is no dispute of the facts from which the trial court was required to arrive at its conclusion on the question whether Mr. Moody was a "person * * * who [is a] resident of any other state or country" who had accepted "the privilege extended by law to non-residents and others to operate, conduct, engage in, or carry on a business venture in the state, * * *."

The complaint had attached to it an affidavit, to which no counter affidavit or showing has been made, presenting the following state of facts:

(a) On or about April 18, 1968, the defendant spoke with John F. Manson, a major stockholder of the Plaintiff corporation, at which time the defendant advised the said Jack Manson that subject to a survey he wanted to buy the oil screw hydrofoil called the DISCO VOLANTE at and for a purchase price of $10,000 in cash and 22,000 shares of the capital stock of The Empire Life Insurance Company of America, an Alabama corporation; the defendant told the plaintiff that his attorney was Senator A. R. Schwartz, of Galveston, Texas, and agreed that his attorney would close the transaction with the plaintiff's attorney; a trial run of said vessel was arranged for the following day. Thereafter, the defendant sent his agent, one Rudy Teichman, of Galveston, Texas to Miami, Florida to inspect and survey said vessel. That, thereafter, on or about April 19, 1968, at the request of the defendant, said vessel was towed down the Miami River and a trial run conducted under the supervision of the said Rudy Teichman. That the said Rudy Teichman then advised the plaintiff and the defendant

---

1. Florida Statute 48.181(3), F.S.A.:
   (3) Any person, firm or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers or distributors to any person, firm or corporation in this state shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business venture in this state.

that said vessel had passed the survey and authorized and directed Allied Marine Corporation, a Florida corporation, to haul said vessel, to clean said vessel, to paint said vessel, to perform miscellaneous repairs to said vessel, and to furnish miscellaneous supplies to said vessel. Said work was in fact performed by the said Allied Marine Corporation for the defendant. The defendant paid the said Allied Marine Corporation for said services and materials.

(b) Thereafter on or about May 9, 1968, the defendant employed a captain for the said vessel who, at Miami, Florida, contracted with Allied Marine Corporation for: dockage for said vessel; day-by-day care of said vessel consisting of running her engines, pumping her bilges and checking out her lines; and contracted with said Allied Marine Corporation for the preparation of drawings and specifications for the conversion of said vessel to a luxurious day cruiser. Said plans and specifications were in fact completed and delivered to the defendant's agent and master of said vessel, and thereafter the defendant paid said Allied Marine Corporation for said services and materials. Additionally, the captain of said vessel, as agent for the defendant, negotiated with various and sundry vendors of Miami, Florida for the installation of radios, air conditioning, and other materials, negotiated with Miami shipyards for the conversion of said vessel, and negotiated with a local marine architect for the conversion of said vessel.

(c) Thereafter, on or about May 17, 1968, at the request of said A. R. Schwartz, attorney, of Galveston, Texas, the defendant arranged for the transfer of the title of said vessel to the defendant and the title to said vessel was at Miami, Florida transferred and registered in the name of the defendant and the recorded bill of sale of enrolled, or licensed yacht, vessel document and Certificate of Ownership, were forwarded to the said A. R. Schwartz, as agent for the defendant, by mail from Miami, Florida.

(d) Thereafter, the said A. R. Schwartz, attorney, of Galveston, Texas, by Western Union Telegram on May 31, 1968, advised the plaintiff's lawyer in words and figures as follows:

"Henry Taylor
1451 Brickell Avenue
Miami, Florida

Have received all necessary documents for closing of purchase of vessel DISCO VOLANTE by Shean Moody, Jr. Mr. Moody is in Europe at the time but cash consideration and stock for balance of purchase will be delivered to you in due course.

A. R. Schwartz, Attorney for
Shearn Moody, Jr."

It being evident from a casual glance at this statement of facts that the non-resident Moody was actively present in the State of Florida by his several agents for a period of approximately one month from April 19, when defendant caused his representative Teichman of Galveston, Texas to fly to Miami, Florida, until May 17, when, at the request of admitted counsel for the defendant, title of the vessel was transferred and registered in the name of the defendant and the recorded Bill of Sale of Enrolled, or Licensed Yacht, Vessel Document, and Certificate of Ownership, were forwarded to the defendant by mail from Miami, Florida, we must conclude whether these activities measure the standards as contemplated by the Florida Statute of "doing business" or engaging in "business ventures" in the State of Florida.

We begin our consideration of the question at issue by recognizing that we are here to construe a Florida Statute. In doing so, of course, the federal courts are required to look to the decisions of the Florida courts. However, where our court has construed such a statute and no intervening state court decision has placed a different construction on it, the rule of stare decisis binds us to our earlier decision just as it does with respect to any other matter with

which the court has to deal. In light of this proposition, we look to the latest decision of this court dealing with the breadth of transactions that we have heretofore found to fall within the concept of "minimum contacts" that would meet constitutional requirements for a long-arm statute. This we do because our court has on at least two occasions categorically read the Florida cases as deciding that "the Florida courts have given a liberal application in actual practice to Section 47.16. The Florida 'doing business' statutes are construed as broadly as consistent with due process." Phillips v. Hooker Chem. Corp., 5 Cir., 1967, 375 F.2d 189, citing Delray Beach Aviation Corp. v. Mooney Aircraft Co., Inc., 5 Cir., 1964, 332 F.2d 135.

■ The appellee called to our attention a case relied upon by the district court, Uible v. Landstreet, 5 Cir., 1968, 392 F.2d 467. We note that the *Uible* case made no comment upon the breadth of construction as commented on by the earlier *Hooker Chem. Co.* case, but stating that "we must be guided, with respect to the other contentions of Uible, by the accepted principle that causes of this kind 'are not susceptible of an inflexible or fixed rule of law, but must be decided on the facts peculiar to each case as it arises,' Williams v. Duval County Hospital Authority (Fla. App. 1967) 199 So.2d 299, 301;" and citing other cases, including *Hooker Chemical Corp., supra*. The court then expressly pretermitted "the constitutional issue of due process" apparently concluding that it did not disagree with the statement by this court in *Hooker Chemical, supra*, that the Florida courts had construed the statute "as broadly as consistent with due process." Although a number of the Florida appellate court decisions cited to us speak in terms of construing the long-arm statute strictly, no case[¹] has been cited to us where the Florida court has held contrary to our *Hooker* pronouncement to the effect that the Flordia statute was intended to be applicable to the fullest extent permissible within consti-

tutional limits upon the state's power to act extraterritorially.

As stated in the *Uible* case and also in *Hooker*, "Causes of this kind * * * must be decided on the facts peculiar to each case as it arises." We conclude that the continual activity of the non-resident in this case in sending his representative to Miami to conduct a trial run of the vessel, his hiring a captain with authority to have repairs made, and having such repairs made and paying for them, and preparing the vessel for meeting the specifications set by the non-resident purchaser, coupled with the consummation of the seller's part of the transaction as to the non-resident purchaser's specific directions to have the necessary documents completed for title to pass, fall well within the concept of "minimum contacts," which in turn brings it within the power of the state to reach out to obtain service in the manner provided by the Florida statute. The case most nearly similar to this, it seems to us, is the Florida Supreme Court decision, William E. Strasser Construction Corp. v. Linn, 97 So.2d 458.

■ The appellant also relies upon sub-paragraph (3) of Section 48.181 (see footnote 1 above), claiming that the transaction here amounted to a sale by Moody of 22,500 capital shares of stock of Empire Life Insurance Company of America. The appellee dismisses it summarily by stating that this was not a sale of stock but was a contract for the purchase of a vessel in return for which payment was to be made by a transfer of this amount of stock. While our opinion thus far may make it unnecessary to reach this second point, we think it appropriate to undertake to construe this section, since appellant relies with equal confidence on this section. Neither party cites any case clearly resolving this issue. However, it is difficult to see why an agreement to convey the 22,500 shares of stock does not come within the terminology of paragraph 3 which speaks of selling intangible personal property "by any means whatever."

In such circumstances, the statute says that such person "shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business venture in this state."

We conclude that on both grounds the non-resident defendant brought himself within the Florida Statute and was subject to service as provided in Section 48.-181.

The judgment is reversed and the case is remanded to the district court, for further proceedings not inconsistent with this opinion.