LETTS, Judge.
This is an interlocutory appeal from an order of the trial court granting a motion to quash service of process and dismissing the cause of action against the appellee (Atlas Aircraft Corporation). The service of process quashed, was effected, under the Florida “Long Arm” Statute, Chapter 48.181, upon the said Atlas Aircraft Corporation, a nonresident corporation, based in Colorado and engaged as a dealer, in the regular selling of aircraft to customers.
We are unable to agree with the order of the trial judge quashing service and dismissing the cause of action.
The appellant, Marcia Buckingham, was injured in an air crash in Alabama, while aboard a light plane owned by the appellee, Atlas Aircraft Corporation (Atlas), which plane was being “ferried” by Atlas to its dealership premises in Colorado. The record reveals that most of the stockholders, officers, directors and president of Atlas hold similar stock and officer positions in another Colorado corporation, Aviation Sales, Inc., which latter corporation would repeatedly buy Piper aircraft, wholesale, with all of the paperwork prepared and sent back and forth between Colorado and the administrative offices of Piper in Pennsylvania. Thereafter, said Aviation Sales, Inc. would transfer title to the aircraft, often still located in Florida, from itself as a wholesaler, to the appellee, Atlas, as a dealer, again by paperwork completed exclusively in Colorado. It should be noted that Aviation Sales, Inc. was not restricted to selling planes to Atlas, but also sold planes in several states to other dealers. Pursuant to the above modus operandi, planes were, on various occasions, delivered, f. o. b. Vero Beach, Florida, to Atlas, and an independent contractor procured to “ferry” the planes from Vero Beach to Colorado. Accordingly, the “ferrying” of planes to Colorado was repeatedly done in the normal course of the appellee’s business as an incident thereto. The record also reveals that the president of the two corporations, named above, while under deposition, was frequently unable to recall many of the specifics of which corporation did what, or where, or when, it did so. Suffice it to say that the record shows that the foregoing recited chronology of events undeniably took place and constituted a repeated course of business conduct, which, at all events, occurred in exactly the manner related above, on the occasion of the plane crash which took the life of the pilot, and injured the appellant.
In an affidavit supplied to the Court, Atlas declared that none of its agents, servants, brokers, jobbers, wholesalers, distributors, or any other persons conducting business for it, ever did business in Florida from a time prior to the accident, giving rise to the lawsuit, up until the time of its subsequent dissolution. The mutual president also testified to frequent trips to Florida, by himself, and other officers and employees of Atlas, for meetings with Piper personnel to discuss sales, instruction techniques, and occasionally, even to fly new planes back to Colorado; however, the mutual president uniformedly insisted that, from before the time of the accident and all times thereafter, all such officers and employees, notwithstanding their dual corporate roles, always came to Florida wearing only their Aviation Sales, Inc. hats, and never on behalf of the appellee, Atlas, even although they regularly worked, or acted, for the latter in Colorado. There is nothing in the record to controvert this testimony as to the nature of the Florida visits, except as referred to herein from the deposition, affidavit and answers to the interrogatories, included in the record.
Atlas took title to the aircraft in which the tragedy occurred, from Aviation Sales, Inc. on November 15th, 1972, and received delivery of it on November 17th, 1972, f. o. b. at Vero Beach, Florida, where a pilot, procured for the purpose, commenced his ill fated trip. The very same pilot had, ac *656 cording to dual president’s affidavit satisfactorily completed one prior ferrying trip for Atlas . . from Florida to Colorado, only two weeks before. Moreover, in answers to interrogatories made a part of the record, Atlas conceded that it had acquired many planes from Florida, as follows:
The defendant has indirectly purchased many Piper Aircraft, some of which were manufactured in Florida . . . purchased for the purpose of re-selling aircraft to customers in Colorado.
Further, in answer to yet another interrogatory, Atlas said:
Personnel of the defendant have, from time to time attended dealer meetings held by Piper Aircraft in Florida. On some occasions, employees have picked up aircraft, from the Florida plant of Piper, which had been purchased from Aviation Sales, Inc., which had, in turn, purchased the aircraft from Piper.
In addition, the deposition of the dual president reveals that, on more than one occasion, customers of Atlas had, themselves, come to Florida accompanied by Atlas personnel, to pick up a Piper plane which Atlas had sold to said customers.
Appellee’s brief is insistent that Atlas did no business whatever in Florida, and that if any was done, it was by the related, but separate, corporation, Aviation Sales, Inc.; however, without the necessity of examining the Siamese twin-like relationship between these two corporations, (both had the identically same, stockholders, the dual president and one other), we cannot agree. In the landmark case of Youngblood v. Citrus Associates of New York Cotton Exchange, Inc., 276 So.2d 505, 509 (Fla. 4th DCA 1973), Judge Cross set forth the requirements to be satisfied in order to permit the application of Florida’s “Long Arm” Statute, noting that “. . . the burden of proof to sustain the validity of service of process is upon the person who seeks to invoke the jurisdiction of the court.” We believe the appellant has successfully carried this burden in the case now before us. Atlas, itself, was in the regular commercial business of selling Piper aircraft manufactured in Florida, received title to many of same in this State, took delivery, f. o. b. Vero Beach, procured pilots to fly them (the aircraft) to Colorado, and even on occasion brought customers to Florida to pick up aircraft sold by Atlas to said customers. Perhaps no single one of all of the foregoing actions, or events, would suffice to subject Atlas to the jurisdiction of the Florida courts, but the combination of them existing here, oft times repeated, irresistibly establishes a pattern of “doing business” in this State. In the case of C.I., Inc. v. Travel Internationale, Ltd., 236 So.2d 441 (Fla.1970), where a similar question was presented, the Supreme Court affirmed the ruling of the Third District Court of Appeals, noting that evidence that, the defendant nonresident corporation, leased a plane, repaired it and hired a pilot to fly it, all of these events taking place in Florida, was adequate to support a finding of engaging in a business venture within the state. Moreover, in the case of Fourth Dimension Interiors, Inc. v. Decorator Services, Ltd., 256 So.2d 571 (Fla. 3rd DCA 1972), the court held that the nonresident corporation was doing business in Florida because it was the actual purchaser of the merchandise to be shipped out of state.
As was said in the case of Flying Saucers, Inc. v. Moody, 421 F.2d 884 at 887 (5th Cir. 1970), “Causes of this kind . . . must be decided on the facts peculiar to each case as it arises.” In the instant case, we conclude from the foregoing recitation of facts and circumstances, that Atlas was engaged in a business venture in Florida under Chapter 48.181, and that the proceeding here being reviewed arose out of a transaction and an operation connected with and incidental to said business venture.
CROSS and ANSTEAD, JJ., concur.